United States Court of Appeals,

Eleventh Circuit.

No. 95-8934.

Alexis M. HERMAN, Secretary of the United States Department of Labor, Plaintiff-Appellee,

v.

NATIONSBANK TRUST COMPANY (Georgia), National Association, a National Banking Association, Defendant,

Sovran Capital Management Corporation, a Virginia Corporation;  NationsBank of Georgia, N.A., Defendants-Appellants.

Nov. 5, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CV-1474-HTW), Horace T. Ward, Judge.

Before COX and CARNES, Circuit Judges, and FAY, Senior Circuit Judge.

CARNES, Circuit Judge:

NationsBank of Georgia, N.A. ("NationsBank") is the trustee of an employee stock ownership plan ("ESOP") governed by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1000-1461 ("ERISA" or "the Act").[1]  The Secretary of the Department of Labor brought this lawsuit against NationsBank, claiming it had violated ERISA by failing to exercise independent judgment in responding to competing tender offers for the ESOP's shares. After the district court denied both parties' motions for summary judgment, NationsBank brought this interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  For the reasons set forth below, we affirm in part and reverse in part the district court's order denying summary judgment to both parties.

## I. BACKGROUND

### A. FACTS

This case arose out of a battle over control of Polaroid Corporation ("Polaroid").  The facts below are not disputed by the parties.

#### 1. *The Genesis of the Polaroid ESOP*

---

[1]An employee stock ownership plan is an ERISA plan which invests primarily in the employer's stock.  *See* 29 U.S.C. § 1107(d)(6)(A).

In 1988, Polaroid was the subject of a hostile takeover attempt by Shamrock Acquisitions, III, Inc. ("Shamrock"). Partly in response to the takeover threat, Polaroid established an ESOP called the Polaroid Stock Equity Plan.[2] Eventually Polaroid named Citizens & Southern Trust Company, later known as NationsBank, as the trustee of the ESOP. Sovran Capital Management Corporation was retained to provide investment advice to NationsBank.

At its inception, the Polaroid ESOP held over 9.7 million shares of newly-issued Polaroid common stock, constituting 13.4% of Polaroid's common stock. The ESOP shares were purchased with a $15 million cash contribution from Polaroid and $285 million that Polaroid loaned the ESOP.[3] Polaroid funded the ESOP by imposing a 5% pay cut and reducing benefits.

ESOP shares purchased with Polaroid's cash contribution were allocated to accounts for ESOP participants in proportion to each participant's compensation. ESOP shares that were purchased with the loaned funds were held and continue to be held in a suspense account, the "Unallocated Common Stock Account," as collateral for the loan. As the ESOP makes loan payments to Polaroid (with contributions from Polaroid), shares are released from the Unallocated Common Stock Account and allocated to the individual participants' accounts in proportion to each participant's compensation.

2. *Plan Provisions on Voting Shares*

The Polaroid ESOP has several provisions that address the voting of ESOP shares. In general, the ESOP provides for "pass-through voting," which allows participants to vote their allocated shares like ordinary shareholders. Without that provision, the Polaroid ESOP would not

---

[2]Shamrock sought an injunction against Polaroid's creation of the ESOP, claiming it was an illegal anti-takeover device. *See Shamrock Holdings, Inc. v. Polaroid Corp.,* 559 A.2d 257, 269-70 (Del.Ch.1989). The Delaware Chancery Court denied the injunction. The court found that the ESOP's voting provisions gave plan participants control over the ESOP shares. *See id.* at 273-74. Based largely upon that finding, the court held that the ESOP was not an illegal anti-takeover device. *See id.* at 274.

[3]This "paper sale" of the newly issued stock resulted in significant tax savings to Polaroid. *See* 26 U.S.C. § 404(a)(9); *see also Summers v. State Street Bank and Trust Co.,* 104 F.3d 105, 106 (7th Cir.1997) (describing a similar transaction and its tax consequences).

qualify for tax benefits. *See* 26 U.S.C. § 409(e). The ESOP further provides that in the event of a tender offer, plan participants may direct the trustee to tender or not tender their allocated shares.

The ESOP prohibits the trustee from tendering a participant's shares unless the participant specifically instructs the trustee to tender. It states that the trustee should interpret a participant's silence as a direction not to tender his or her allocated shares. In addition, the ESOP provides for "mirror voting," which means that the trustee is instructed to tender unallocated shares held by the plan in the same proportion as it tenders allocated shares. According to the briefs of the amici curiae, provisions for pass-through voting of allocated shares and mirror voting of unallocated shares are commonly included in ESOPs.

According to the ESOP documents, the trustee's liability for its conduct during a tender offer depends, in part, on how well the trustee complies with the other voting provisions. The Polaroid ESOP states that Polaroid will indemnify the trustee for any liability incurred in responding to tender offers, so long as the trustee followed the participant direction provisions of the plan.

If a tender offer is accepted, the ESOP further provides that, except in limited circumstances not relevant to this appeal, the trustee must reinvest all tender offer proceeds in Polaroid stock.

### 3. *The Tender Offers*

In September 1988, Shamrock made a tender offer of $42 per share for all of Polaroid's common stock, contingent upon Shamrock obtaining a judgment in Delaware state court that the Polaroid ESOP shares were invalidly issued. Shamrock later raised its offer to $45 per share. Polaroid responded in January 1989 with a selftender offer of $50 per share for a maximum of 16 million of the 71.5 million shares of Polaroid common stock (including the ESOP shares). The Polaroid offer provided that if more than 16 million shares were tendered, Polaroid would buy tendered shares on a pro-rata basis and return extra shares to each tenderer.

On February 23, 1989, NationsBank mailed all Polaroid ESOP participants a brief description of the competing tender offers, advising them of their rights under the plan to instruct NationsBank by March 23, 1989 either to: (1) tender to Polaroid, (2) tender to Shamrock, or (3) not

3

tender. NationsBank informed participants that if they did not return an instruction form, their non-responses would be treated as instructions not to tender. However, the letter did not advise participants that unallocated shares would be voted in the same proportion as allocated shares.

On the same date, the Secretary of Labor sent NationsBank an unsolicited letter outlining the Secretary's view of NationsBank's fiduciary responsibilities in light of the competing tender offers. *See* Letter from the Department of Labor to Citizens & Southern Trust Company (February 23, 1989), *reprinted in* 16 Pens. & Ben. Rep. (BNA) 390 (March 6, 1989) ("Polaroid letter"). The Secretary insisted that an ESOP trustee bears the final responsibility for making tender offer decisions with regard to the plan's unallocated shares and its allocated non-voted shares.[4] The Secretary advised that a trustee may follow plan provisions relating to participant direction of such shares only to the extent permitted by § 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D). The Secretary did not suggest any restriction on a trustee following participant directions as to allocated shares that were actually voted.

On March 20, 1989, NationsBank's Trust Policy Committee met to consider the tender options on behalf of the ESOP. The Committee initially discussed the Secretary's letter and what the Committee understood to be its legal responsibilities in tendering the ESOP's shares. The Committee was advised by its legal counsel that it had the responsibility of deciding how the shares could be voted prudently, and that it had the duty to disregard plan provisions if they led to an imprudent result.

The Committee then proceeded to determine the prudence of each option available to the plan. The Committee observed that the gain or loss to the plan resulting from tendering shares to either offer, or from not tendering shares, would depend upon the post-tender market situation. It noted that under the terms of the plan, the ESOP probably would be required to invest any tender proceeds in Polaroid stock purchased on the open market. The Committee noted that, if it tendered

---

[4]By "allocated non-voted shares," we mean those shares that were not returned to NationsBank by participants. By operation of the Polaroid ESOP, those non-voted shares were treated as votes not to tender by NationsBank.

shares and the post-tender market price of Polaroid shares was less than the amount of the tender offer accepted, the ESOP would obtain more shares than it had before. However, if it tendered shares and the market price of Polaroid shares rose above the tender price before full reinvestment, the ESOP would end up with fewer shares than it had before tendering.

In making its decision about what would be prudent, the Committee attempted to predict whether post-tender market prices would exceed or fall below the tender offer prices. It noted two factors that could cause the market price to rise. First, Shamrock had expressed its intention to continue its takeover attempt. The Committee believed Shamrock might raise its offering price to over $50 per share. Second, Polaroid was involved in pending copyright litigation that could result in a billion-dollar damage award in Polaroid's favor. The Committee believed that such an award, if obtained, would greatly increase Polaroid's stock price.

Based on those considerations, the Committee concluded that the post-tender market price of Polaroid stock was uncertain enough that it would be prudent to choose any of the available options: tendering shares to the self-tender offer, tendering to the Shamrock offer, or not tendering. After reaching that conclusion, the Committee decided to follow the plan provisions on the tendering of allocated and unallocated shares held by the ESOP, i.e., as to all of the ESOP's shares.

On March 23, 1989, NationsBank tendered the ESOP shares in accordance with the provisions of the plan and the participants' votes. In all, NationsBank tendered 5,239,460 of the ESOP's shares to Polaroid. NationsBank withheld 4,332,044 shares. Of those shares 53,387 were withheld based on participants' directions not to tender. An additional 34,581 of those shares were withheld because NationsBank planned to tender those shares to Shamrock in accordance with participants' directions, but Shamrock withdrew its offer before the shares were tendered. The remaining 4,244,076 withheld shares were withheld because of the plan's mirror voting provision. NationsBank tendered all of the (non-ESOP) shares it held in discretionary trust accounts (3,900 shares) to Polaroid.

After failing in its attempt to have the Polaroid ESOP invalidated, Shamrock tendered each of its Polaroid shares to Polaroid. In all, non-ESOP Polaroid shareholders (including Shamrock) tendered 84 percent of their shares to Polaroid.

Polaroid accepted 27.7747% of the shares tendered by each tendering shareholder. Polaroid paid the ESOP $72,762,200 for the shares it tendered, and NationsBank reinvested those funds in Polaroid stock between April 3 and April 12, 1989, at prices ranging from $37.41 to $37.67 per share. As a result of the repurchase, the ESOP's stake in Polaroid was increased by 482,073 shares. If NationsBank had tendered all of the unallocated shares and the allocated non-voted shares held by the ESOP, the ESOP would have obtained an additional 332,917 shares.

## B. PROCEDURAL HISTORY

The Secretary filed suit against NationsBank in 1992.[5] In Count One of the complaint, the Secretary claimed that NationsBank violated §§ 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. §§ 1104(a)(1)(A) and (B), by failing to tender all of the unallocated shares and the allocated non-voted shares to Polaroid. In Count Two, the Secretary alleged that an indemnification provision in the ESOP, which stated that Polaroid would indemnify NationsBank for any liability incurred in responding to tender offers so long as NationsBank followed the participant direction provisions of the plan, created a disincentive for NationsBank to exercise its independent judgment and, therefore, encouraged NationsBank to breach its fiduciary obligations under ERISA.

The district court granted summary judgment to the Secretary on Count Two of the complaint. The court agreed with the Secretary's view that the indemnification provision provided NationsBank with a financial incentive to refrain from exercising its independent judgment. *See Martin v. Nationsbank of Georgia, N.A.,* 16 Employee Benefits Cas. (BNA) 2138, 2141, 1993 WL

---

[5]Lynn Martin was the Secretary of the Department of Labor in 1992 and the original plaintiff in this action. Robert Reich succeeded Martin in 1993 and was substituted as the plaintiff. Alexis Herman is now Secretary of the Department of Labor and has been substituted as the plaintiff.

345606 (N.D.Ga.1993). That incentive, the court held, violated general trust law principles and ERISA's command that trustees act solely in the interests of participants and beneficiaries. *See id.*

The parties proceeded with discovery on Count One of the Secretary's complaint. After completing discovery, both parties moved for summary judgment on Count One. In an order and opinion, the court held that NationsBank could not rely upon participants' votes of their allocated shares and the ESOP's mirror voting provision in deciding whether and how to tender unallocated shares. Instead, the court held, NationsBank was required to exercise its independent judgment and follow plan provisions only if they led to a prudent result. The court also held that NationsBank possessed the exclusive responsibility for deciding whether to tender allocated non-voted shares, and that ERISA barred NationsBank from interpreting participants' non-responses as directions not to tender.

However, the court did not grant summary judgment in favor of the Secretary, because it held that genuine issues of fact exist regarding whether NationsBank acted prudently in not tendering to Polaroid the ESOP shares in question, i.e., all of the ESOP shares except the allocated ones that were actually voted. It also held that genuine issues of fact exist as to whether NationsBank acted solely in the interest of plan participants.

NationsBank requested that the district court certify for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), its order denying the parties' motions for summary judgment on Count One of the Secretary's complaint. NationsBank did not seek certification of the court's order as to Count Two, in which the court had struck down the indemnification provision. The district court did certify its order as to Count One, recognizing that there is substantial ground for difference of opinion as to "the proper standard to be applied to the Trustee's decision on whether to follow the plan document and tender unallocated shares as directed by the participants." We granted permission for the interlocutory appeal.[6]

---

[6]Although the district court discussed only the unallocated shares issue in its order certifying its summary judgment order for interlocutory appeal, we have the entire summary judgment order before us pursuant to 28 U.S.C. § 1292(b). *See, e.g., Grayson v. K Mart Corp.,* 79 F.3d

7

## II. STANDARD OF REVIEW

Summary judgment should be granted only when there is no genuine issue regarding a material fact, and judgment is appropriate as a matter of law. *See* Fed.R.Civ.P. 56. This Court must apply the same legal standards that the district court was required to apply in its summary judgment decision; therefore, the district court's legal conclusions are subject to *de novo* review. *See Southern Solvents, Inc. v. New Hampshire Ins. Co.,* 91 F.3d 102, 104 (11th Cir.1996).

## III. DISCUSSION

This appeal requires us to apply ERISA's fiduciary rules to a species of ERISA plans, the ESOP.

### A. STANDARDS GOVERNING THE MANAGEMENT OF ASSETS BY ERISA TRUSTEES AND FIDUCIARIES

ERISA sets out a fiduciary scheme that applies to all employee benefit plans including ESOPs. It requires that the assets of an employee benefit plan be held in trust by at least one trustee. *See* 29 U.S.C. § 1103(a). Generally, "the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan." *Id.* Where the trustee has the exclusive authority and discretion to manage and control plan assets, the trustee is the quintessential fiduciary. Under ERISA:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A) (West Supp.1997).

Insofar as a trustee has fiduciary authority and control over plan assets, a trustee is governed by ERISA's strict fiduciary rules. "ERISA imposes high standards of fiduciary duty upon those responsible for administering an ERISA plan and investing and disposing of its assets." *Martin v. Feilen,* 965 F.2d 660, 664 (8th Cir.1992); *see also* 29 U.S.C. § 1104(a) (containing standards for

1086, 1096 (11th Cir.1996). Both parties have argued the allocated non-voted shares issue as well as the unallocated shares issue, and we will address both issues.

fiduciaries).  Indeed, the standard of care owed by ERISA fiduciaries, including trustees, has been described as "the highest known to law."  *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982) (Friendly, J.).  ERISA mandates, among other requirements, that:

> (1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>> (A) for the exclusive purpose of:
>>
>>> (i) providing benefits to participants and their beneficiaries;  and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ...;
>>
>> (C) by diversifying the investments of the plan ... [a requirement not applicable to ESOPs, *see* 29 U.S.C. § 1104(a)(2) ];  and
>>
>> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]....

29 U.S.C.A. § 1104(a) (West 1985 & West Supp.1997).  ERISA also subjects fiduciaries to personal liability for breaching the duties imposed by § 1104(a), *see id.* § 1109, and for certain breaches by co-fiduciaries of their duties, *see id.* § 1105.

As we mentioned above, ERISA provides that trustees usually shall have exclusive authority and control over plan assets.  However, ERISA allows a plan to allocate authority and control over plan assets to parties other than trustees, if that allocation fits one of three exceptions.  In the first exception, the plan may delegate the authority to manage plan assets to one or more investment managers.  *See id.* § 1103(a)(2).  In the second exception, the plan may provide for individual participant accounts and give participants control over the assets in their accounts. *See id.* § 1104(c).  Under applicable regulations the participant account exception in § 1104(c) does not apply to ESOPs;  the Secretary has interpreted that provision to apply only to plans giving participants a range of investments from which to choose.  *See* 29 C.F.R. § 2550.404c-1 (1996).  In the third and final exception, the plan may provide "that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee...."  29 U.S.C. § 1103(a)(1).

9

If a plan falls under one of the three exceptions to exclusive trustee authority, then the responsibilities of the trustee are correspondingly lessened. For example, if the plan provides that an investment manager has the authority to control plan assets, then the trustee is not liable for losses caused by the investment manager. *See id.* § 1105(d)(1); *see also Lowen v. Tower Asset Mgt., Inc.,* 829 F.2d 1209, 1219 (2d Cir.1987). Or, if a plan gives participants control over individual accounts pursuant to 29 U.S.C. § 1104(c) (which is not applicable to ESOPs), the trustee is not liable for any loss caused by any breach which results from the participant's exercise of control over those assets. *See* 29 U.S.C. § 1104(c)(2)(B).

Finally, because of the third exception, to the extent that a plan allocates the authority to manage and control plan assets to a named fiduciary, the trustee becomes "subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter...." *Id.* § 1103(a)(1) (West 1985). In other words, insofar as a trustee acts at the direction of a named fiduciary in accordance with the terms of the plan and ERISA's requirements, he is not subject to the fiduciary requirement in § 1104(a) to act prudently. *See Maniace v. Commerce Bank of Kansas City, N.A.,* 40 F.3d 264, 267 (8th Cir.1994) (holding that directed trustee was not acting as a fiduciary in following named fiduciary's direction and did not need to weigh the merits of those directions). *But see FirsTier Bank, N.A. v. Zeller,* 16 F.3d 907, 911 (8th Cir.1994) (holding that trustee, who was subject to direction of the plan sponsor to make loans to plan participants, was not relieved of its fiduciary duty to conform to the prudent man standard of care in making loans).

In this appeal, we are concerned with the third exception, the one provided in 29 U.S.C. § 1103(a)(1) for trustees who are directed by named fiduciaries. Specifically, we must decide whether Polaroid ESOP participants may be named fiduciaries who can direct NationsBank's asset management decisions with regard to unallocated shares and allocated but non-voted shares.

B. THE PARTIES' CONTENTIONS

10

NationsBank argues that participants in the Polaroid ESOP are named fiduciaries with respect to the tendering of all shares held by the ESOP, making NationsBank merely a directed trustee with regard to the tendering of ESOP shares, subject only to § 1103(a)(1)'s commands to follow plan provisions that are not contrary to ERISA. In NationsBank's view, it cannot be held liable for making imprudent tendering decisions, because it is not governed by the prudent man standard in § 1104(a)(1)(B). This litigation position is, of course, contrary to NationsBank's conduct. As we have previously discussed, pursuant to counsel's advice, NationsBank undertook to determine what action was prudent as to the ESOP shares. Only after determining that any and all actions in response to the tender offer would be prudent did NationsBank follow participant directions according to the plan.

NationsBank's fallback position in this litigation is that even if § 1104(a)(1)(B) applies to NationsBank's conduct in tendering the shares, it may not be held liable because it acted prudently. The district court held that the question of NationsBank's prudence could only be decided after a trial.

The Secretary takes the position that ERISA allows ESOP participants to be named fiduciaries only with respect to allocated shares for which participants give explicit directions. *See* Letter from the Department of Labor to Ian D. Lanoff (September 28, 1995) at 3, *reprinted in* 22 Pens. & Ben. Rep. (BNA) 2249, 2250 ("Lanoff letter"). She agrees with NationsBank that if a trustee follows participants' explicit directions regarding allocated shares, the trustee's conduct with respect to those shares is judged only by whether it is "in accordance with the plan terms," as well as "not being contrary to the provisions of ERISA."[7] *Id.* (footnote omitted). She concedes that where the plan gives participants the authority to direct the trustee's vote of the allocated shares, the directed trustee's actions concerning allocated, voted shares are judged by § 1103 (the directed

---

[7]The trustee's conduct in following explicit directions with regard to allocated shares—as distinguished from the trustee's conduct relating to unallocated shares or allocated non-voted shares—would not be subject to a prudence test. *See* Lanoff letter at 3-4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) 2249, 2250-51.

11

trustee standard), not § 1104 (the standard for fiduciaries). *See id.* ("[Y]ou, as Plan trustee, may follow such directions subject to the standards of section 403(a) [29 U.S.C. § 1103(a) ] described above.").

The Secretary distinguishes the exercise of control by plan participants over unallocated shares and allocated non-voted shares held by an ESOP from the exercise of control over allocated voted shares. She takes the position that participants may never be named fiduciaries with regard to unallocated shares or allocated non-voted shares, and, therefore, that participants cannot direct a trustee pursuant to 29 U.S.C. § 1103(a)(1) with regard to those shares. Unless another exception to trustee responsibility and liability is applicable, the Secretary's position is that § 1104(a)(1), including the prudent man standard, governs a trustee's decisions with respect to unallocated and allocated non-voted shares.

The Secretary also makes a more narrow argument in this appeal with regard to the unallocated shares. She maintains that even if ESOP participants may be named fiduciaries with regard to unallocated shares in some circumstances plans, the Polaroid ESOP participants were not named fiduciaries with regard to the unallocated shares in their plan, because the tender notice did not inform the participants that their action or inaction would affect the unallocated shares.

The Secretary further contends that the only prudent decision for NationsBank to make in light of the competing tender offers was to tender all of the ESOP's shares to Polaroid. According to the Secretary, NationsBank violated § 1104(a)(1)(B) in two ways: (1) by tendering unallocated shares in proportion to the plan participants' votes of their allocated shares, as the plan provided, instead of tendering all of the unallocated shares to Polaroid; and (2) by not tendering to Polaroid allocated shares for which NationsBank received no explicit directions from the plan participants. However, the Secretary does not challenge NationsBank's decision to tender allocated voted shares in accordance with participants' directions, even where those directions were to tender to Shamrock or not to tender. The Secretary has no quarrel—at least in this case—with NationsBank following

12

the explicit directions of plan participants as to the shares allocated to the participants, even if the directed action was imprudent.

## C. DEFERENCE TO THE SECRETARY'S INTERPRETATION

We begin by acknowledging the deference we owe the Secretary's interpretation of the controlling act. The Secretary of the Department of Labor is charged with enforcing ERISA and its fiduciary duties, and she has the authority to render authoritative interpretations of the Act. *See* 29 U.S.C. § 1132(a)(2). Unless Congress, in enacting ERISA, demonstrated clearly its intent with regard to the questions before us, we must defer to the Secretary's official interpretations of ERISA if they are reasonable. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Jaramillo v. Immigration and Naturalization Serv.,* 1 F.3d 1149, 1152 (11th Cir.1993) (en banc). Neither NationsBank nor the Secretary contends that Congress has spoken directly to the ERISA issues presented in this appeal, and we conclude that Congress' intent on these matters is less than clear. Consequently, our role in this case is quite limited, at least where the Secretary has taken an official position:

> Under *Chevron* a court is not to search for what in the court's view is the best possible construction of the statute....Realizing that administrators and judges might well disagree about the wisdom of a policy behind an agency's construction of a statutory provision, the Supreme Court admonished courts not to forget to whom the authority and responsibility for such policy making is entrusted[.]

*Jaramillo,* 1 F.3d at 1152-53.

NationsBank claims we should not give *Chevron* deference to the Secretary's interpretation of ERISA, because that interpretation is espoused only in litigation documents and opinion letters, and not in formal regulations. That position may have validity as to litigation documents, but not as to pre-litigation opinion letters, at least not in this circuit. Although the Secretary has not promulgated regulations on the issues presented in this appeal, we still owe her pre-litigation opinion letter views considerable deference. *See Blessitt v. Retirement Plan for Employees of Dixie Engine Co.,* 848 F.2d 1164, 1172 (11th Cir.1988) (deferring to agency interpretation of regulation in opinion letter); *Williams v. Wright,* 927 F.2d 1540, 1545 (11th Cir.1991) ("Although these [Department of

13

Labor/ERISA] opinion letters are not binding in this court, the views of the agency entrusted with interpreting and enforcing the ERISA statute carry considerable weight."); *Coca Cola Co. v. Atchison, Topeka, and Santa Fe Ry. Co.,* 608 F.2d 213, 222 (5th Cir.1979) (holding that agency opinion letters interpreting regulations, "although less authoritative than regulations or formal decisions, are entitled to be "weighed carefully' and to "great deference' if they state a reasonable conclusion") (citation omitted); *see also State of Georgia Dept. of Medical Assistance v. Shalala,* 8 F.3d 1565, 1569 & n. 8 (11th Cir.1993) (deferring to agency explanatory manual interpreting statute over which agency has been delegated administrative authority). On those matters in this appeal where the Secretary made an official pronouncement before this litigation began, we must accord her view deference.

According to NationsBank, we should also refuse to defer to the Secretary's interpretations of ERISA, because the Secretary invoked the deliberate process privilege during discovery.[8] NationsBank fails to cite any cases holding that an agency's interpretation of a statute does not deserve deference if the agency invokes that privilege. Even if NationsBank presented persuasive authority on this matter, however, we would be reluctant to address the issue. The district court's order denying summary judgment to both parties, from which NationsBank has appealed, did not address this question. NationsBank did not raise the issue before this Court until it submitted its reply brief. Under these circumstances, we decline to decide whether an agency's interpretation of a statute deserves less deference due to the invocation of the deliberative process privilege. *See United States v. Coy,* 19 F.3d 629, 632 n. 7 (11th Cir.1994) (holding that arguments raised for the first time in reply brief are not properly before the court). We will afford the Secretary the same deference that we would apply if she had not invoked the privilege.

NationsBank and amici curiae also argue that the Secretary's position in this litigation is inconsistent with her most recent pronouncement on the relevant issues and, therefore, it does not

---

[8]The deliberative process privilege "protects the internal decisionmaking processes of the executive branch in order to safeguard the quality of agency decisions." *Nadler v. United States Dept. of Justice,* 955 F.2d 1479, 1490 (11th Cir.1992).

deserve deference. However, after reviewing the relevant documents, we find no inconsistency between the Secretary's positions in this litigation and any of her other pronouncements on the relevant issues. According to the documents cited by both parties, the Secretary has consistently maintained that the fiduciary responsibility of managing unallocated ESOP shares resides with the trustee, not with the plan participants. *See* Polaroid letter at 3, *reprinted in* 16 Pens. & Ben. Rep. (BNA) at 390; Lanoff letter at 3, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2250. She is entitled to deference on that view. The Secretary also has consistently taken the position that a trustee may follow participants' directions regarding those shares only insofar as the directions are prudent, in accordance with the plan, and not contrary to ERISA.[9] Polaroid letter at 3, *reprinted in* 16 Pens. &

_____

[9]The Lanoff letter stated the Secretary's position with respect to unallocated shares as follows:

> ... [T]o the extent the plan provisions instruct the trustee to pass through decisions regarding tender offers and/or proxy voting to the plan participants, a plan trustee may follow such plan provisions only to the extent permitted by section 404(a)(1)(D) of ERISA....
>
> The existence of a plan provision purporting to require that a trustee follow a particular course of action—in this case participant directions with respect to a tender offer or a proxy vote—does not diminish the extent of the trustee's duty to diligently investigate and evaluate the merits of the course of action required by the plan document to determine that the instructions are consistent with titles I and IV [of ERISA].

*Id.* at 3-4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2250-51.

There is one difference between the Secretary's earlier pronouncements and the Lanoff letter, but it is does not diminish the weight we give to the Secretary's view. Previously, the Secretary had said trustees *may* follow participants' instructions on voting or tendering unless those instructions are imprudent, contrary to the plan, or contrary to ERISA. *See* Polaroid letter at 3, *reprinted in* 16 Pens. & Ben. Rep. (BNA) 390. In the Lanoff letter, the Secretary said the trustee *must* follow such directions unless the trustee "can articulate well-founded reasons why doing so would give rise to a violation of titles I or IV ..., for example, the prudence requirements of title I." *See* Lanoff letter at 4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2250-51.

If the Secretary had sued NationsBank for *not* following plan provisions that were prudent and lawful, then the shift in the Secretary's position (from a trustee may follow prudent and lawful instructions to a trustee must follow prudent and lawful instructions) would be relevant to this case. However, that is not the dispute in this case, and we reject NationsBank's argument that the Lanoff letter diminishes the weight of the Secretary's position in this case.

Ben. Rep. (BNA) at 390; Lanoff letter at 4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2250-51. Furthermore, the Secretary has consistently maintained that the trustee of an ESOP always retains fiduciary responsibility for voting allocated non-voted shares. *See* Letter from the Department of Labor to John Welch, Latham & Watkins (April 30, 1984), *reprinted in* 11 Pens. & Ben. Rep. (BNA) 633 (May 7, 1984); Lanoff letter at 4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2251. We will defer to the Secretary's judgment on those points, if we conclude that her positions are reasonable.

### D. ANALYSIS: THE UNALLOCATED SHARES

#### 1. *Whether Polaroid ESOP Participants Are Named Fiduciaries*

The Secretary contends that ESOP participants are not and cannot be named fiduciaries with regard to unallocated shares, because they can never satisfy ERISA's definition of named fiduciaries with regard to those shares. In the alternative, the Secretary argues more narrowly that as to the unallocated shares the Polaroid ESOP participants did not meet the definition of named fiduciaries during the Polaroid tender offer battle, because the tender notice did not inform them of their power and control over the unallocated shares.

The Secretary's more narrow position is not espoused consistently in pre-litigation position papers, and, therefore, it is not entitled to deference. Nevertheless, without deciding the broader definitional question, we hold that the Secretary's more narrow position is correct, which is to say it coincides with our own view.

In ERISA, a "named fiduciary" is defined as:

a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C.A. § 1102(a)(2) (West 1985). According to this definition, a person may not be a named fiduciary in a given situation unless: (1) he meets ERISA's definition of a fiduciary and (2) he is identified as a fiduciary, either in the plan or through a procedure described in the plan.

16

The Secretary contends, and we agree, that the Polaroid ESOP participants did not meet the definition of fiduciaries during the Polaroid tender battle. As we have mentioned previously, ERISA specifies that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee ..., or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21)(A) (West Supp.1997). The plain language of the definition clearly states that a person is not a fiduciary unless he either has discretion or exercises authority or control with respect to plan assets. If a person does not have discretion or exercise authority or control in a given situation, he does not meet the definition of a fiduciary.

NationsBank contends that the Polaroid ESOP participants had the discretion to vote the ESOP's unallocated shares and that they exercised control through their votes. Therefore, NationsBank claims, the participants were fiduciaries during the tender offer battle and they could satisfy the definition of named fiduciaries with regard to the unallocated shares. NationsBank argues that the participants, and not NationsBank, had the responsibility for determining how the unallocated shares should be voted.

The Secretary responds that the Polaroid ESOP participants could not satisfy the definition of fiduciaries, because whatever control they had over the unallocated shares was unknown to them. Because the participants were not fiduciaries, the Secretary argues, they could not meet the definition of named fiduciaries, either. In the Secretary's view, NationsBank remained ultimately responsible for determining the voting of the unallocated shares.

We conclude that the language of ERISA supports the Secretary's position. As we mentioned above, a fiduciary must have discretion to decide the disposition of plan assets or must exercise authority or control over plan assets. The term "discretion" means the "power of free decision or choice" or "individual judgment." *Webster's Third New International Dictionary* 647 (1986). In order to have the power of decision or choice, a person must know that he can decide an

17

issue and be aware of the choices he has. A person cannot exercise the power of choice or individual judgment unless he is aware of his ability to do so. To "exercise" is to "make effective in action," *id.* at 795, and a person must have knowledge of his authority or power to control in order to exercise control. In order for a fiduciary to exercise discretion, the fiduciary must engage in conscious decisionmaking or knowledgeable control over assets. Based on the plain language of ERISA, ESOP participants are not fiduciaries when they do not knowingly decide how assets will be managed. Or, restated in the terms of this case, ESOP participants are not fiduciaries with regard to unallocated shares when they are not given notice that their action or inaction with regard to their allocated shares will control the disposition of the unallocated shares.

This rule makes sense, given the responsibilities that go along with being an ERISA fiduciary. In enacting ERISA, one of Congress' primary goals was to devise a system whereby plan participants and beneficiaries could hold fiduciaries accountable for their obligations:

> It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by ... establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C.A. § 1001(b) (West 1985); *see also Lowen v. Tower Asset Mgt., Inc.,* 829 F.2d 1209, 1218 (2d Cir.1987) ("ERISA was deliberately structured so that legal responsibility for management of ERISA plans would be clearly located."). Named fiduciaries and all other fiduciaries are subject to the strict fiduciary standards in 29 U.S.C. § 1104, and they may be sued for breaching those standards. *See* 29 U.S.C. § 1109 (fiduciary may be held liable for breaching any duty imposed upon fiduciaries by ERISA); *see also* IIA *Scott on Trusts* § 185 (4th ed.1987) (stating that if the holder of the power to direct a trustee is a fiduciary, the holder is subject to liability for the exercise or nonexercise of that power). If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants in ERISA plans.

18

We note that Congress considered the implications of fiduciary liability for participants in a context that is similar to the situation before us, and in that context Congress devised a result that is markedly different than the one NationsBank proposes here. 29 U.S.C. § 1104(c)(1) addresses fiduciary responsibility and liability in plans that provide for individual participant accounts and which give participants a range of investments from which to choose. *See* 29 C.F.R. § 2550.404c-1 (1996). In that subsection, Congress acknowledged that such plans may give participants control *over their own accounts. See* 29 U.S.C. § 1104(c)(1). If those plans so provide, the trustee is free from liability arising out of participants' decisions over their accounts. *See id.* § 1104(c)(1)(B). The subsection further specifies that such participants will not be deemed fiduciaries as a result of exercising control over their own accounts. *See id.* § 1104(c)(1)(A). Judging from § 1104(c)(1), Congress wanted to prevent participants from being saddled with ERISA liability when they exercise control only over their own allocated assets. That is entirely consistent with ESOP participants not being liable for exercise of control over their own allocated shares, at least not liable beyond the loss of value to those very shares.

Yet, NationsBank asks us to go beyond that and read into ERISA a shift from itself to plan participants of the liability for managing the unallocated assets held by the ESOP. We should do that, NationsBank says, because there is no provision in ERISA that differentiates between allocated and unallocated shares or that expressly prohibits participants from being named fiduciaries.[10]

We think it is enough distinction that making participants named fiduciaries with regard to unallocated shares, at least where they do not knowingly exercise control over those shares, violates congressional intent as demonstrated in ERISA's definitions of fiduciaries and named fiduciaries.

---

[10]We note that if the Secretary had taken the position that participants may not be named fiduciaries with regard to allocated voted shares, her position might be in conflict with the tax code. 26 U.S.C. § 409(e) requires that ESOPs either give participants pass-through voting of allocated shares or lose the tax benefits Congress created for ESOPs. The Secretary's position that participants may be named fiduciaries with regard to allocated shares appears to be an attempt to keep ERISA law and tax law consistent. However, NationsBank has not suggested that the Polaroid ESOP participants must be named fiduciaries with regard to unallocated shares in order for tax law and ERISA to be consistent.

Furthermore, 29 U.S.C. § 1104(c), which addresses a situation analogous to the one in this case, indicates congressional approval of participant control over allocated assets, but shows no approval of participant control over unallocated assets.

Congress may have considered the strikingly different situations presented by giving participants control over their allocated shares versus control over unallocated shares. When participants vote or tender their allocated shares, their decisions affect their own accounts, rather than the unallocated assets of the plan. With allocated shares the person injured by a participant's imprudent decision is that participant. By contrast, if participants are given the ultimate control over unallocated shares, their imprudent decisions affect the interests not only of themselves but also the interests of their co-participants. If many participants acted imprudently, or merely neglected to respond, under a plan containing a mirror voting provision, the unallocated share pool could suffer significant losses. One participant might lose part of the value of his stake in the unallocated share pool due to another participant's imprudent decision or non-decision.

Moreover, insofar as participants are named fiduciaries with regard to their own shares, the risk of liability they face is minimal. Participants will not sue themselves for making imprudent decisions regarding their own shares. In effect, the Secretary's position that participants may be named fiduciaries with regard to allocated shares treats participants like normal shareholders, whose liability for acting imprudently is limited to the loss of their own shares.

By contrast, if participants are named fiduciaries with regard to unallocated shares, as a result of their actions they may face risks of liability extending beyond loss of value in their own shares. NationsBank has pointed to nothing in ERISA that would bar co-participants, the ESOP itself, or the Secretary from suing participants when they make imprudent decisions with regard to unallocated shares. We find NationsBank's position to be unacceptable, at least where participants

20

are not adequately informed of the responsibilities they possess and the liability that could go hand in hand with those responsibilities.[11]

Here, the participants were not given sufficient notice of the fact that their votes would control the unallocated shares. The only evidence in the record indicating any knowledge on the part of the Polaroid participants that their votes would control the unallocated shares is an affidavit of a Polaroid employee representative, which states that many employee participants were told of the mirror voting provision. From that affidavit, we cannot tell whether all of the participants were given notice at any time regarding how the mirror voting provision works. More importantly, we know that the Polaroid ESOP participants definitely were *not* told about the mirror voting provision in the materials NationsBank sent the participants in connection with the tender offer. That written notice stated that each participant could "indicate your instructions regarding Shares and associated Rights credited to your account in the ESOP," and that if the participant failed to do so, that failure would be treated as an instruction not to tender his allocated shares. The written notice is conspicuous for its failure to mention anything about the unallocated shares.

The implication of the notice NationsBank sent to the Polaroid participants is that they controlled only their allocated shares. Indeed, NationsBank itself understood, at the time of the tender offer votes, that its Trust Policy Committee had the final say on how the unallocated shares would be voted, and that the Committee had the duty to pick a prudent option for the participants. At the Trust Policy Committee meeting on March 20, 1989, the Committee noted that its conduct was governed by 29 U.S.C. § 1104 and ERISA forbade it, as trustee, from following plan provisions on voting if such provisions led to an imprudent result. The Committee believed that it had a fiduciary obligation to independently determine whether each tender option was prudent for the ESOP, and it in fact conducted a prudence analysis with regard to each option. The invisible

---

[11]Because ESOP participants could conceivably face liability to other persons and entities if they were named fiduciaries with regard to unallocated shares, we are not sure that such status could be forced upon participants even with sufficient notice. A plan might be required to give participants a chance to opt-out from such responsibilities and liabilities. However, we need not and do not decide that matter.

21

premise of NationsBank's argument that the participants knowingly exercised discretion and control over those unallocated shares is that the participants understood the plan and ERISA better than NationsBank did at the time. We suspect that NationsBank's implicit modesty is less anchored in sincerity than it is driven by the situational winds of this litigation.

We hold that under the circumstances of this case, the Polaroid ESOP participants could not meet the definitional standard for an ERISA fiduciary with regard to the unallocated shares. Furthermore, because no person can be a named fiduciary under ERISA without first satisfying the definition of a fiduciary, the Polaroid ESOP participants were not named fiduciaries, either.[12] Thus, we conclude that the Secretary's position on unallocated shares is a persuasive one, at least in the circumstances where notice sent the participants concerning the tender offer failed to inform them of the effect their action or inaction would have on the unallocated shares.[13]

2. *The Proper Standard to Apply to NationsBank's Conduct*

Since Polaroid ESOP participants are not named fiduciaries with regard to unallocated shares, 29 U.S.C. § 1103(a)(1) and its directed trustee standard do not govern NationsBank's conduct with regard to the tendering of those shares. Instead, NationsBank retained the exclusive fiduciary authority to manage those shares, and its conduct with regard to those shares is governed by the fiduciary standards in 29 U.S.C. § 1104(a)(1). According to § 1104(a)(1)(D), NationsBank was

---

[12]Because the Polaroid ESOP participants do not meet the definition of fiduciaries with regard to unallocated shares and, for that reason, they do not meet the definition of named fiduciaries with regard to those shares, we need not address whether the Polaroid ESOP participants are sufficiently identified as fiduciaries in the plan to meet the second part of the definition of named fiduciaries. *See* 29 U.S.C. § 1102(a)(2) (defining named fiduciary as a fiduciary who is identified as a fiduciary in the plan).

[13]The Secretary argued yet another reason why ERISA prohibits participants from being named fiduciaries with regard to unallocated shares. The Secretary contends that present participants have a conflict of interest with future participants and, for that reason, present participants may not make decisions affecting future participants. The district court relied in part on this ground in denying NationsBank's motion for summary judgment. However, we need not and do not decide in this case whether present plan participants have a conflict of interest with future plan participants. That the Polaroid ESOP participants were not told about their control over the unallocated shares at the time they were given the tender offer choices is enough to decide the issue involving those shares in this appeal.

22

obligated to determine whether the plan provisions regarding the voting of unallocated shares were contrary to ERISA. *See id.* NationsBank also was required to determine whether it was prudent to tender the unallocated shares, and if so, to whom, *see* 29 U.S.C. § 1104(a)(1)(B), and it had the duty to act solely in the interest of the plan participants, *see id.* § 1104(a)(1).

### a. Contrary to ERISA

We agree with NationsBank that a provision instructing a trustee to vote unallocated shares in the same proportion as participants vote their allocated shares is not per se contrary to ERISA. The Secretary has not contended otherwise; she has taken the position that a trustee should follow a mirror voting provision unless doing so leads to a violation of § 1104(a)(1), e.g., an imprudent result.[14] *See* Lanoff letter at 4, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2251. We do not find fault with NationsBank merely for attempting to comply with the mirror voting provision.

### b. The Prudence of NationsBank's Conduct

However, NationsBank could not follow the ESOP's mirror voting provision blindly if the participants' votes led to an imprudent result. *See* 29 U.S.C.A. § 1104(a)(1)(D) (West Supp.1997) (providing that trustee must act prudently and "in accordance with the documents and instruments governing the plan *insofar as such documents and instruments are consistent with [ERISA]* ") (emphasis added); *Central States Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985) ("[T]rust documents cannot excuse trustees from their duties under ERISA."); *Ershick v. Greb X-Ray Co.,* 705 F.Supp. 1482, 1487 (D.Kan.1989) (holding that ESOP trustee was required to follow plan document only to extent such actions were consistent with ERISA; if following plan document caused imprudent result, trustee would violate § 1104(a)(1)(D)); *Utilcorp United Inc. v. Kemper Fin.* Serv., 741 F.Supp. 1363, 1365-66 (W.D.Mo.1989) (holding that adherance to plan document provisions not sufficient to satisfy ERISA

---

[14]Further support for concluding that mirror voting provisions are not contrary to ERISA is found in the tax code. Congress has conditioned tax benefits for plans holding non-registered securities on the inclusion of a mirror voting provision. *See* 26 U.S.C. § 409(e)(5). That tax provision does not cover the Polaroid ESOP, because this plan holds registered securities. Nevertheless, it indicates congressional approval of mirror voting in some instances.

23

duty of prudence); *cf. DeBruyne v. Equitable Life Assurance Soc'y,* 920 F.2d 457, 464-65 (7th Cir.1990) (analyzing prudence of investment action "regardless of whether it comported with [alleged plan documents]"); *Central Trust Co. v. American Avents Corp.,* 771 F.Supp. 871, 874-76 (S.D.Ohio 1989) (holding that "[p]ass-through voting of allocated shares is not improper per se, but is inappropriate when the exercise thereof conflicts with the fiduciary obligations imposed by ERISA") (citation omitted). If NationsBank determined, or should have determined, that the allocated share votes as dictated by the mirror voting provision were imprudent, then NationsBank was required to ignore that provision and vote the unallocated shares prudently notwithstanding it.[15]

We will not decide the fact-laden issue of whether NationsBank acted prudently in following the mirror voting provision, because the district court held that genuine issues of fact existed precluding summary judgment on that question. We will remand the case to the district court for determination of those factual issues and a resulting decision on the prudence question.

### c. Whether NationsBank Acted Solely in the Interest of Participants

The district court did not address the issue of whether NationsBank acted solely in the interest of participants, as required by 29 U.S.C. § 1104(a)(1), other than to hold that genuine issues of fact exist on that question. NationsBank does not contend otherwise on appeal, and we leave it to the district court to resolve that dispute.

### E. ANALYSIS: THE ALLOCATED NON-VOTED SHARES.

We now turn to the question of whether plan participants may be named fiduciaries with regard to allocated non-voted shares held by an ESOP. The Secretary claims, and the district court agreed, that NationsBank violated ERISA by not tendering the allocated non-voted shares held by

---

[15]NationsBank argues that an ERISA trustee must follow a plan provision unless it is facially invalid, or unless following the provision would be an abuse of the trustee's discretion. We disagree, at least where plan participants are not sufficiently informed to be named fiduciaries. In such a situation, ERISA dictates that a mirror voting provision that leads to an imprudent result is invalid as applied. Therefore, the trustee must disregard the provision, just like it would have to disregard any other plan provision controlling the disposition of plan assets which leads to an imprudent result. *See* 29 U.S.C. § 1104(a)(1) (providing that a fiduciary must act in the manner a prudent man would act in managing plan assets).

24

the Polaroid ESOP to Polaroid. The Secretary contends that: ESOP participants may not be named fiduciaries with regard to allocated non-voted shares; NationsBank was not a directed trustee with regard to those shares; and NationsBank could not rely upon the plan's provisions regarding those shares to avoid liability when those provisions led to an imprudent result. The Secretary has repeatedly and consistently pronounced the view that participants may not be named fiduciaries with regard to allocated non-voted shares. We owe it considerable deference and will uphold it if it is reasonable.

The Secretary makes both a textual argument and a policy argument to support her position that plan participants may not be named fiduciaries with regard to allocated non-voted shares. For her textual argument, the Secretary cites ERISA's requirement that a named fiduciary control a directed trustee via "proper *directions* ". *See* 29 U.S.C.A. § 1103(a)(1) (West 1985) (emphasis added). According to the Secretary, directions are explicit responses only, and mere non-responses do not constitute directions to a trustee. For her policy argument, the Secretary contends that it violates ERISA's purposes to allow participants to be named fiduciaries in circumstances where they failed to return directions.

We conclude that the Secretary's interpretation of ERISA with regard to the allocated non-voted shares is unreasonable. Participants may be named fiduciaries with regard to allocated voted shares—as the Secretary has conceded—because participants have the discretion to decide or the ability to control how those shares should be voted. *See* 29 U.S.C. § 1002(21) (defining a fiduciary as a person who has discretionary authority over plan assets or who exercises control over plan assets). Participants have control over the allocated shares in their accounts. Participants do not lose control over their shares merely by failing to respond to a tender request, at least not when they are specifically told in the notice that such a response will be treated as a direction not to tender. Contrary to what the Secretary contends, a participant's informed failure to respond to a tender request is an exercise of control or discretion.

25

The Secretary's position that the term "directions" requires explicit responses is unreasonably strict. Directions include "guidance or supervision of action, conduct or operation." *Webster's Third New International Dictionary* 640 (1986). If the trustee informs participants of their choices, and participants are reminded at the time of decision how the trustee will treat non-responses to the trustee's request, then non-responses suffice as guidance, or directions, for the trustee. Indeed, the black letter law of trusts requires the trustee to follow the participants' silent directions, if the plan so provides:

> where by the terms of the trust it is provided that the trustee shall not do certain acts without the direction or consent of another, it is ordinarily his duty not to do such acts without such direction or consent.

Restatement (Second) of Trusts § 185 cmt. b (1959).

As a matter of policy, the Secretary claims that NationsBank could not have known why participants failed to return explicit directions and, for that reason, it should have exercised its independent judgment on the prudence of tendering those shares. We reject the Secretary's argument, because it is inconsistent with the Secretary's position that participants may be named fiduciaries with regard to allocated voted shares. If the Secretary views participants as sufficiently knowledgeable and accountable to bear the fiduciary responsibility of voting and tendering allocated voted shares, then there is no reason to treat them as uninformed and irresponsible when they do not explicitly respond to a tender offer after being told specifically how a non-response will be treated. We reiterate that in order for non-responses to satisfy the definition of directions, the trustee must provide participants with sufficient information regarding their options at the time it requests directions, and participants must be told at that time how the trustee will treat non-responses. So long as those requirements are met, there is no reason to presume that participants do not know what they are doing when they fail to respond.

In sum, the Secretary's position regarding allocated non-voted shares is unreasonable. Even when the Polaroid ESOP participants failed to respond explicitly to NationsBank's tender request regarding their allocated shares, the participants were named fiduciaries who controlled

26

NationsBank's conduct pursuant to § 1103(a)(1). NationsBank's conduct with regard to those shares was not governed by § 1104(a)(1), and NationsBank was not required to exercise its independent judgment in deciding how and whether to tender those shares. It only had to make sure the participants' directions were proper, in accordance with the terms of the plan, and not contrary to ERISA. *See* 29 U.S.C. § 1103(a)(1).

The Secretary does not argue that the Polaroid ESOP participants' directions with regard to allocated non-voted shares were not in accordance with the plan or that those directions were contrary to ERISA. She does argue, however, that participants could not give "proper directions," because they were not given adequate information about the tender options and the last-minute developments taking place before the voting deadline. We leave it up to the district court to decide in the first instance if the notice was adequate in those respects. In deciding that question, the district court should apply the standard for proper directions that the Secretary has consistently espoused, and which both parties cite in this appeal. The Secretary has explained that directions received from participants are proper if:

> [the trustee] follows procedures to assure that the eligible individual account plan's provisions are fairly implemented, that the participants have not been subjected to coercion or undue pressure in making their decisions, that necessary information is provided to the participants, [and] that clearly false information or misleading information is not distributed to the participants....

Lanoff letter at 3, *reprinted in* 22 Pens. & Ben. Rep. (BNA) at 2250.

### IV. CONCLUSION

At least where ESOP participants are not informed at the time of a tender offer of a plan's mirror voting provision and the control the participants possess over the plan's unallocated shares, such participants are not "named fiduciaries" within the meaning of ERISA with regard to the unallocated shares. The Polaroid ESOP participants were not informed of the mirror voting provision in their plan at the time they voted. Therefore, they could not be named fiduciaries with regard to unallocated shares at the time of the Polaroid tender offer battle, and NationsBank was not a directed trustee with regard to those shares. We agree with the Secretary that NationsBank had

27

the duty to determine how those shares could be voted prudently, and it was required to override the plan's mirror voting provision if necessary to achieve a prudent result. NationsBank also was required to act solely in the interest of participants in voting the unallocated shares.

Contrary to what the Secretary contends, however, the Polaroid ESOP participants could be named fiduciaries with regard to the allocated non-voted ESOP shares. The Secretary has conceded that ESOP participants may be named fiduciaries with regard to allocated voted shares, and they may control a directed trustee if given proper directions. We conclude that the Secretary's position that participants' "directions" must be explicit is unreasonable, at least where the participants are fully informed at the time that a failure to respond will be treated as a "no" vote. Without deciding whether the directions in this case were completely "proper," we hold that a failure to respond may under certain circumstances constitute a "direction[ ]."

Based on these conclusions, we AFFIRM in part and REVERSE in part the district court's order denying both parties' motions for summary judgment. We REMAND the case for the district court to decide: (1) whether NationsBank acted prudently or imprudently in failing to tender to the Polaroid tender offer the unallocated shares held by the plan; (2) whether NationsBank acted solely in the interest of participants in failing to tender the unallocated shares; (3) whether the instructions given to the plan participants with regard to allocated non-voted shares were proper; and (4) any other issues necessary to decide this case in a manner not inconsistent with this opinion.