**LOCAL UNION 2134, UNITED MINE WORKERS OF AMERICA, etc., et al., Plaintiff-Appellee,**

v.

**POWHATAN FUEL, INC., etc., et al., Defendants,**

**Leroy Osborne, Jr., Defendant-Appellant.**

No. 86–7543.

United States Court of Appeals, Eleventh Circuit.

Sept. 28, 1987.

---

Curtis W. Gordon, Jr., Gordon, Harrison & Lathum, Birmingham, Ala., for defendant-appellant.

J. Allen Sydnor, Jr., Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiff-appellee.

Before RONEY, Chief Judge, FAY, Circuit Judge, and ATKINS*, Senior District Judge.

FAY, Circuit Judge:

In this case we review an order of the district court holding the president who was also the health plan fiduciary of a closely held corporation personally liable to the employee-beneficiaries based on the nonpayment of health plan premiums. The district court ruled that the president was a health plan fiduciary under the Employee Retirement Income Security Act ("ERISA"), and that the president had breached his fiduciary duty to properly maintain insurance coverage, 640 F.Supp. 731. Because we hold the district court erred in holding the president personally liable, we reverse and vacate the order of the district court and remand this case to the district court.

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The former employees of Powhatan Fuel, Inc., are all appellees in this suit. At all relevant times they were also members of the UMWA.

## FACTS

Local Union 2134 of the United Mine Workers of America ("UMWA") filed this suit on June 16, 1983, in district court on behalf of former employees of Powhatan Fuel, Inc. ("Powhatan"), a coal mining company, under ERISA, 29 U.S.C. § 1001 et seq. (1982)[1] seeking damages resulting from the nonpayment of health care premiums. UMWA brought this action against Powhatan, Leroy Osborne, Jr., the president, Wayne Brewster, the secretary-treasurer and, Jim Henderson,[2] the manager. UMWA alleged that Powhatan, and each person sued individually, were liable under ERISA for failure to maintain sufficient funds with which to pay the insurance premiums for Powhatan's employee health plan.

Appellee, Leroy Osborne, Jr., ("Osborne") was president of Powhatan since the company's incorporation in 1978. Osborne owned 90–95 percent of Powhatan's corporate stock. Osborne, as president, was primarily responsible for Powhatan's daily operations. Powhatan entered into and was signatory to the National Bituminous Coal Wage Agreements of 1978 and 1981 ("BCWA") which are collective bargaining agreements between the UMWA and all signatory employers. These agreements imposed upon signatories the duty to provide health care benefits to active employees, their spouses and their dependants. Osborne, on behalf of Powhatan, entered into the BCWA and subsequently obtained an employee insurance plan.

In 1981 a national UMWA strike took place. Sometime thereafter Powhatan began experiencing financial difficulties. For periods of time during 1982 and 1983 the required health care premiums were not paid. This caused periodic lapses in health care coverage for the employees of Powhatan and their families, who incurred medi-

---

2. The district court dismissed Mr. Henderson with prejudice because appellee was unable to properly serve him.

cal expenses. The employees of Powhatan subsequently went on strike.

On June 21, 1983, Powhatan filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 362(a) (1982) all actions against Powhatan as a corporation were stayed. *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir.1983); *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 314 (7th Cir.1983). Appellees thereafter proceeded individually against Osborne, as president, and Brewster as secretary and treasurer. Appellees alleged that Osborne and Brewster were fiduciaries of Powhatan's health plan under ERISA, 29 U.S.C. § 1002(21)(A) (1982). 29 U.S.C. § 1002(21)(A) provides that a person is a fiduciary with respect to an employee health plan ...

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has discretionary authority or discretionary responsibility in the administration of such plan....

*Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985).

On February 24, 1986, the case was tried by the District Court for the Northern District of Alabama. The district court ruled that the health insurance plan of Powhatan was an employee welfare benefit plan under ERISA, 29 U.S.C. § 1002(1) which provides:

> The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee orga-

nization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

The district court further ruled that Osborne was a fiduciary pursuant to 29 U.S.C. § 1002(21)(A). The court noted that Osborne was solely responsible both for the solicitation of the various insurance policies used for Powhatan's employee health plan, as well as the payment of insurance premiums. The court stated that Osborne, as president and 90–95 percent shareholder, was the principal spokesperson and liaison between Powhatan's employees and the insurance carriers regarding the maintenance of insurance coverage, and as such, exercised authority over the dissemination of information regarding the insurance coverage. The court found that Osborne's decision to use the funds available to pay business expenses of Powhatan, rather than insurance premiums, was a breach of his fiduciary duty under ERISA. The court ruled that Osborne was personally liable to the former employees of Powhatan under 29 U.S.C. § 1109 (1982) for damages in the stipulated amount of $127,391.58.[3]

The court ruled that Brewster was not involved in or responsible for the management or administration of the employee health plan. As such, Brewster's duties as secretary and treasurer were purely ministerial. Brewster had no contacts with any of the insurance carriers and had no authority or control over the disbursement of funds towards the health plan. Thus, the

---

**3.** 29 U.S.C. § 1109 (1982) provides that health plan fiduciaries who breach their fiduciary duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any

profits of such fiduciary which have been made through use of assets of the plan by the fiduciary...." *Id.*; *Leigh v. Engle*, 727 F.2d 113, 137 (7th Cir.1984).

court ruled that Brewster was not a fiduciary under ERISA and was not liable to appellees. Therefore, this appeal concerns the ruling of the district court with respect to only Osborne.

## DISCUSSION

■ In this case we are called upon to distinguish the dual responsibilities and duties of the president of a closely held corporation in his capacity as president, to the corporation, from the responsibilities and duties he has in his capacity as fiduciary of the corporation's employee health plan under ERISA. ERISA specifically allows an officer of a corporation to also serve as fiduciary of the corporation's health plan. Title 29 U.S.C. § 1108(c) provides that "nothing in ... this title shall be construed to prohibit any fiduciary from— (3) serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." *Flinchbaugh v. Chicago Pneumatic Tool Co.,* 531 F.Supp. 110, 113–14 (W.D.Pa. 1982). "Officers of a corporation often are trustees of its benefit plan." *Morse v. Stanley,* 732 F.2d 1139, 1146 (2nd Cir.1984); *See Evans v. Bexley,* 750 F.2d 1498, 1499 (11th Cir.1985). Further, there is no inherent conflict of interest where an officer of a corporation is also the fiduciary of the corporation's health plan. *Flinchbaugh,* 531 F.Supp. at 113. ERISA contemplates such a situation where an officer of a corporation wears two hats—when acting in the capacity of an employee of the corporation, the officer owes a duty to act on behalf of the corporation. *See Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1416–17 (2nd Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). On the other hand, when the officer is acting in the capacity as fiduciary of the health plan, the officer owes a duty to act in the best interest of the plan's beneficiaries. *Id.*

### A. OSBORNE'S DUTY AS FIDUCIARY OF THE EMPLOYEE HEALTH PLAN

■ Fiduciaries of health plans under ERISA have a duty to administer the plan "solely in the interest of the participants and the beneficiaries and—for the exclusive purpose of: providing benefits to participants...." 29 U.S.C. § 1104(a)(1)(A)(i) (1982); *Morse,* 732 F.2d at 1144. As fiduciary of the health plan, Osborne certainly had an obligation to attempt to maintain sufficient funds with which to properly administer the plan for the employee-beneficiaries. Title 29 U.S.C. § 1104(a)(1)(B) (1982) provides that a health plan fiduciary shall discharge the duty to administer the plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Amato,* 773 F.2d at 1416; *Leigh,* 727 F.2d at 123; *see Morse,* 732 F.2d at 1145. The fiduciary also may not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1) (1982). Such a fiduciary also has a duty to keep the beneficiaries of the plan informed as to the insurance coverage, or lack thereof, for the plan. *See e.g.,* 29 U.S.C. §§ 1021, 1022, 1024 (1982). It is not clear from the record whether Osborne misrepresented to the employees of Powhatan that they were insured for the health plan when, in fact, they were not. Several of the employees testified at trial that Osborne had made misrepresentations as to the existence of insurance coverage. Clearly, if Osborne did make such misrepresentations, he would have breached his fiduciary duty to the health plan. *Peoria Union Stock Yards Company Retirement Plan v. Penn Mutual Life Insurance Co.,* 698 F.2d 320, 326 (7th Cir.1983). The district court, however, did not make a finding of fact in this regard. The district court's order holding Osborne personally liable was predicated solely on Osborne's decision not to pay the insurance premiums.

We therefore remand this portion of the district court's order so that the district court can make findings of fact on this matter.

### B. OSBORNE'S DUTY AS PRESIDENT OF POWHATAN

■ The president of a closely held corporation makes business decisions based

upon his duty as president to the corporation. As president of Powhatan, Osborne made decisions with respect to the handling of corporate funds. Included in such decisions is the president's decision regarding the payment of the corporation's operating and business expenses based upon the funds available. The district court held that when Osborne made the decision to pay the employees' salaries and other business expenses of Powhatan he violated his fiduciary duty under ERISA to maintain the plan. We think the district court erred in this conclusion.

"ERISA recognizes that a person may be a fiduciary for some purposes and not others.... The key language in the statutory definition is that a person is a fiduciary [of the plan] 'to the extent' he or she exercises control or authority over the plan." *Leigh,* 727 F.2d at 133. One assumes fiduciary status "only when and to the extent" that they function in their capacity as health plan fiduciaries, not when they conduct business that is not regulated by ERISA. *Amato,* 773 F.2d at 1416–17. Under the circumstances of this case, Osborne's decision to pay the business expenses of Powhatan, in an attempt to keep the corporation from financial collapse, was a business decision Osborne made in his capacity as president of the corporation. It is not unusual in a closely held corporation for the president and majority stockholder to control the corporation's operations. *McKissick v. Auto-Owners Insurance Co.,* 429 So.2d 1030, 1033 (Ala.1983). However, "[a] corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers." *Read News Agency, Inc. v. Moman,* 383 So.2d 840, 843 (Ala.Civ.App.), *writ denied sub nom,* 383 So.2d 847 (Ala. 1980). Thus, this decision by Osborne to pay bills other than the insurance premiums was not made in his capacity as fiduciary of the health plan, it was made as the president of the corporation. Indeed, until monies were paid by the corporation to the plan there were no assets in the plan under the provisions of ERISA. This distinction in the role of president of the corporation as opposed to the role as fiduciary of the

plan does not diminish in any way the obligation of the fiduciary to keep the beneficiaries (employees) advised as to the status of the plan, insurance coverage, etc. as discussed in section A.

### CONCLUSION

Osborne was serving in two distinct capacities. One as president of the corporation. One as the trustee or fiduciary of the employee health plan. The district court failed to properly distinguish the separate obligation of each office. We reverse the judgment of the district court, vacate the order holding Osborne personally liable and remand this matter for supplemental proceedings and findings consistent with this opinion.

REVERSED, VACATED and REMANDED.