[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 19, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-12779

_____

D. C. Docket No. 01-00381-CV-H-NE

ITPE PENSION FUND,

Plaintiff-Appellant,

ITPE HEALTH AND WELFARE FUND,

Plaintiff,

versus

ROGER HALL,
HOPE HALL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 19, 2003)**

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

The Employee Retirement and Income Security Act ("ERISA"), 18 U.S.C.A. § 1001 et seq., imposes strict fiduciary duties on certain persons with control over assets of covered employee benefit plans. Under these provisions, when unpaid contributions to a plan are identified as immediate assets of a plan, officers of the nonpaying corporation with control and authority over the unpaid contributions may be held liable for the amount of nonpayment.

This appeal requires us to determine whether corporate officers may be imputed fiduciary duties and, consequently, held personally liable for unpaid contributions, when the governing agreement between the corporation and the plan does not clearly state, but could be interpreted to state, that such contributions are assets of the plan. We find that either clear contractual language or clear, shared intent of the parties is a necessary prerequisite to imposing fiduciary responsibility on officers who otherwise would be unsure of their increased responsibilities under ERISA. Though we conclude that the language of the agreement is not sufficiently clear to impose fiduciary duty, we must VACATE and REMAND to the district court to determine whether the parties clearly intended unpaid employer contributions to be assets of the Fund.

## I. BACKGROUND

Roger Hall and Hope Hall are the general manager and president,

respectively, of H & R Services, a company that supplies management and labor for the operation of dining facilities on military bases. Pursuant to collective bargaining agreements with the Industrial, Technical, and Professional Employees Union, AFL-CIO ("ITPE"), H & R Services is obligated to contribute funds to the ITPE Pension Fund ("the Fund") for the future security of its unionized employees.

H & R Services failed to make these contributions. On 18 November 1999, the ITPE Pension Fund, among other funds, filed suit in the Northern District of Alabama for the recovery of this delinquency. The district court entered summary judgment for the Fund on 30 March 2001, assessing damages in the amount of $123,767.27 against H & R Services. The court also entered a permanent injunction that required H & R Services to remit in a timely fashion the future contributions owing under its agreement with the Fund.

Even after this proceeding, H & R Services failed to remit payment to the Fund. The judgment amount went uncollected, and the terms of the permanent injunction went unheeded. Faced with this continued intransigence, the Fund filed suit directly against Hope and Roger Hall. Citing the Employee Retirement Income Security Act ("ERISA"), the Fund now argues that Hope and Roger Hall are in violation of the fiduciary duty that statute places on persons with control over the assets of a ERISA plan. See 29 U.S.C. § 1002(21)(A).

The dispute on which this appeal centers is whether these unpaid contributions to the Plan are "assets," legally speaking, of the Plan, such that Roger and Hope Hall could be considered fiduciaries of the Plan. The district court limited its consideration of the summary judgment motion to that legal issue. The district court found, focusing exclusively on the language of the Agreement, that unpaid employer contributions are not assets of the ITPE Fund within the meaning of § 1002(21)(A), and granted summary judgment on that basis for Roger and Hope Hall. ITPE filed a timely notice of appeal.

## II. DISCUSSION

Our review of a district court's grant of summary judgment is <u>de novo</u>, applying the same standards employed by the district court. <u>Dahl v. Holley</u>, 312 F.3d 1228, 1233 (11th Cir. 2002). Thus, we will not affirm unless, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact which requires a jury determination of the merits. <u>Gary v. City of Warner Robins, Ga.</u>, 311 F.3d 1334, 1337 (11th Cir. 2002).

The parties agree that the Fund is governed by ERISA, because it is indisputably a "plan, fund, or program . . . maintained by an employer or by an employee organization [that] . . . provides retirement income to employees." § 1002(2)(A). Certain persons, including those who "exercise[] any authority or

4

control respecting management or disposition of [fund] assets," bear fiduciary responsibility to an ERISA fund. Id. § 1002(21)(A). The responsibility attaching to fiduciary status has been described as "'the highest known to law.'" Herman v. Nationsbank Trust Co. (Georgia), 126 F.3d 1354, 1361 (11th Cir. 1997) (quoting Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). If a person breaches their fiduciary duties to an ERISA fund, he or she "shall be personally liable to make good to such [fund] any losses . . . resulting from each such breach." 29 U.S.C. § 1109(a).

The central item of dispute in this case is whether unpaid employer contributions are assets of the ITPE Fund, such that the Halls could conceivably be held personally liable for breach of their fiduciary duty with respect to those assets. The text of ERISA does not give a relevant definition for what constitutes an "asset" of an ERISA fund. The proper rule, developed by caselaw, is that unpaid employer[1] contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.[2] See, e.g.,

---

[1] By regulation and without the requirement of a particularized agreement, unpaid *employee* contributions to ERISA funds are assets of those funds. 29 C.F.R. § 2510.3-102 (2002). No such regulation exists for *employer* contributions, which are at issue in this case.

[2] In Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc., 828 F.2d 710 (11th Cir. 1987), the president of a troubled corporation opted to spend corporate assets to pay employee salaries and to otherwise try to keep the corporation afloat, to the detriment of the ERISA plan. We decided in that case that these decisions were made in the president's role as president, and not in his role as an ERISA-plan fiduciary, and that no personal liability could

5

NYSA-ILA Med. & Clinical Servs. Fund v. Catucci ex rel. Capo, 60 F.Supp.2d 194, 200-01 (S.D.N.Y. 1999) (collecting cases); Connors v. Paybra Mining Co., 807 F.Supp. 1242, 1245-46 (S.D.W.V. 1992); Galgay v. Gangloff, 677 F.Supp. 295, 301 (M.D. Penn. 1987). The effect of language that makes unpaid contributions assets of the fund is that "when a corporation is delinquent in its contributions, the fund has a sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets." Catucci, 60 F.Supp.2d at 201. This effect places "heavy responsibilities on employers, but only to the extent that . . . an employer freely accepts those responsibilities in collective bargaining." Id.

Hope and Roger Hall argue that the Agreement in this case affirmatively evidences the fact that unpaid employer contributions are *not* Fund assets. They point to the definitions section of the Agreement and Declaration of Trust, which states that "[t]he terms 'Pension Fund' or 'Fund' shall mean all property of every kind *held* or *acquired* under the provisions of this instrument." R2-44, Ex. 2, Ex.

---

attach therefore under ERISA. Id. at 714. Another way of making this point is to say that the assets over which the president had control were not plan assets. See id. ("Indeed, until monies were paid by the corporation to the [ERISA] plan there were no assets in the plan under the provisions of ERISA."). However, Powhatan does not stand for the proposition that unpaid employer contributions are *never* assets of an ERISA plan until those contributions are actually paid into the plan. Our decision in Powhatan concerned the general rule, that unpaid employer contributions are not assets of an ERISA plan, and we had no occasion to consider in that case the effect of contrary plan language, which, as we have stated supra, is the exception to the rule.

A at § 1.02 (emphasis added). According to the Halls, unpaid contributions, because they are unpaid, are not yet "held" or "acquired" by the Fund, and therefore cannot be assets of the fund.

We cannot accept the full extent of the Halls' interpretation of § 1.02. The idea of "acquiring" property is not limited to possession[3] of the item in question. To "acquire" means "to come into possession *or ownership* of; get as one's own," Random House Dictionary of the English Language 18 (2d ed. 1987) (emphasis added), or "[t]o gain possession *or control* of; to get or obtain," Black's Law Dictionary 24 (7th ed. 1999). Thus, even property which has not yet formally been transferred to the Plan's *physical* control, but which the Plan owns or controls in a contractual sense by virtue of the Agreement, has been "acquired" by the Plan. Section 1.02 is not conclusive of the Plan's treatment of unpaid employer contributions.

The Fund argues that the Agreement establishes by its language that unpaid employer contributions *are* assets of the Fund. It points to language in the "Establishment of Fund" section of the Agreement that states:

> the ITPE Pension Fund . . . shall be comprised of all monies received and held by the Trustees from employer contributions . . ., all income from investments made and held by the Trustees, . . . or any other property

---

[3] That is to say, whatever passes for physical possession of funds in this age of largely paperless transfers of currency.

> received and held or *receivable* by the Trustees for the uses and purposes
> set forth in this Agreement.

R2-44, Ex. 2, Ex. A at § 2.01 (emphasis added). The argument is that because the

unpaid contributions are *receivable*, and because property that is receivable is

property of the Fund, unpaid contributions properly are considered assets of the

Fund.[4]

The Halls assert that § 2.01 does not itself make unpaid employer

contributions assets of the Fund. In the Halls' view, three distinct types of

property are made assets of the Fund by virtue of § 2.01: (1) "all monies received

and held by the Trustees from employer contributions; (2) "all income from

investments made and held by the Trustees," and (3) "any *other* property received

or held or receivable by the Trustees for the uses and purposes set forth in this

---

[4] The language of section 2.01, if we were to accept the Fund's interpretation, makes *receivable property* an asset of the Fund. We want to make clear the distinction between *receivable property* being an asset of the Fund, and <u>receivables</u> being assets of the fund. An agreement which only makes *receivables* assets may not provide a predicate for holding a corporate officer personally responsible for nonpayment of contributions. A receivable is a contractual or legal claim for payment of the money due, in contrast to the actual money due. Even assuming that the receivable is an asset of a plan, a corporate officer would generally not exercise any authority or control over the disposition of that asset – the legal claim for payment. The officer may have had control over the *funds* on which that claim would draw for satisfaction, but those funds are conceptually distinct from the claim itself. <u>See</u>, <u>e.g.</u>, <u>Chapman v. Klemick</u>, 3 F.3d 1508, 1510 (11th Cir. 1993). Without any control over plan assets, there is no predicate upon which to declare the officer a fiduciary of the Plan, and, without fiduciary status, no basis on which to hold him liable under ERISA.

When *receivable property* is made an asset of the fund, the unpaid funds themselves become assets of the fund at the moment they become due. The corporate officer who uses these funds for purposes other than payment of the fund exercises control over plan assets and, therefore, can be held personally liable for breach of his fiduciary responsibility under ERISA.

Agreement. R2-44, Ex. 2, Ex. A at § 2.01 (emphasis added). The Halls stress "*other* property," which they deem to mean any type of property other than employer contributions, which are covered by the first category, and investment income, which is covered by the second category. Thus, only "received and held" employer contributions are assets of the fund, and the asset-status of *unpaid* employer contributions is precluded by the first category, with no recourse to the inapplicable third category. In contrast, the Fund argues that the third category is a catch-all provision. According to the Fund, "all *other* property" means all property not made an asset by the first two categories.

Both of these interpretations of § 2.01 are credible. We conclude that it would be unfair for us to now apply principles of contract construction to decide that such contributions are indeed assets and that personal liability is appropriate for those with control over those newly clarified assets. A person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary:

> If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants

9

in ERISA plans.

Herman, 126 F.3d at 1366.

We appreciate that ERISA is a remedial statute deserving of broad construction, see Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 123 (4th Cir. 1991), and that this broad construction may well extend to ERISA's definition of the people who are fiduciaries of a plan. See Connors, 807 F.Supp. at 1245. But we cannot employ this broad construction to render ambiguous contractual language clear, and without clear contractual language it is improper to impute fiduciary responsibility. Preservation of the purposes of ERISA does not require that we ambush corporate officers with stringent fiduciary duties and personal liability based on convoluted contractual language that requires a court to parse and interpret.

We do not have before us any evidence regarding the intent of the parties as to § 2.01, given the district court's limited ruling on summary judgment based solely on the language of the Agreement. Therefore, we must remand to allow the district court to supervise such discovery or argument necessary to discern the intent of the parties as to § 2.01. If the district court finds that this section was clearly intended by the parties to make unpaid employer contributions assets of the Fund, then summary judgment for the Halls is not appropriate. If there is no clear

intent, then the district court should reinstate summary judgment for the Halls.

### III. CONCLUSION

When contractual language is facially ambiguous and not anchored by the clear, shared intent of the parties, then fiduciary responsibility under ERISA predicated on such language is improper. We find that the Fund Agreement is susceptible of two readings, and that we cannot by reference to only the Agreement's language determine whether unpaid employer contributions are assets of the Fund. If this ambiguity cannot be resolved through reference to the clear intent of the parties, then the district court was correct to enter summary judgment for the Halls. Therefore, we VACATE the district court's grant of summary judgment and REMAND for the purpose of allowing discovery and argument of the parties' intent as to § 2.01 of the Agreement, and for the resolution of this case under the principles explained in this opinion.

BARKETT, Circuit Judge, specially concurring:

I agree that the language of the Agreement and Declaration of Trust is sufficiently ambiguous to require reversal of the summary judgment awarded by the district court. The relevant provision of this instrument specifically states that the Fund includes paid employer contributions and investment income. It then adds to this enumeration "any other property received and held or receivable by the Trustees for the uses and purposes set forth in this Agreement."

In all likelihood, the quoted clause simply establishes the unremarkable proposition that the Fund's assets include all property not specifically designated in the preceding clauses, but nonetheless subject to the trustees' control. One such form of property would be receivables, which is to say legal claims for payment of money due. An employee pension plan that identifies receivables as a type of asset does not thereby create fiduciary obligations on the part of persons with control over the actual funds out of which obligors might satisfy these outstanding claims. Therefore, if the Agreement here reflects only an intent to designate receivables as a type of Fund asset, the Halls cannot be personally liable as fiduciaries for the nonpayment of delinquent employer contributions.

As Judge Birch points out, however, the Agreement refers not simply to "receivables," a well-worn term of art, but to "property received and held or

receivable," a less familiar construction that gives me enough pause to agree that remand is appropriate. If the Fund is able to produce evidence showing that the parties, which included employer H & R Services, clearly intended by these words to define H&R's own corporate holdings as Fund "assets" up to any amount due and owing in unpaid employer contributions, then the Fund's beneficiaries should have the benefit of this bargain. See NYSA-ILA Medical & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999). In this instance, fiduciary status would rightly extend to the Halls inasmuch as they exercised control over corporate funds available to satisfy outstanding contribution obligations. Even so, the Halls would not automatically be personally liable for any and all non-payment. See Local Union 2134, United Mine Workers of America v. Powhatan Fuel, 828 F.2d 710, 714 (11th Cir. 1987) (shielding company president from personal liability, despite his status as ERISA fiduciary, by holding that he acted in his corporate rather than fiduciary capacity when he made the "business decision" to pay expenses other than employees' health insurance premiums "in an attempt to keep the corporation from financial collapse").

I would also clarify that, whatever the intent given effect by the phrase "property received and held or receivable," the Agreement of course does not accord fiduciary status to persons who never assented to the collective bargaining

13

agreements underlying the Fund's creation and operation. Yet I believe we must allow for the possibility that employer and employee representatives did intend for fiduciary status to attach in some circumstances to officers with control over the corporate accounts of employers delinquent in their contribution obligations. To assume as a matter of law that no such agreement could be negotiated ignores the unique relationship between employers and the pension funds to which they contribute for the benefit of their employees. Because employers are so often the guarantors of expected retirement incomes, it is easy to understand why unions and other employee organizations might wish to devise a forceful means of holding corporate officers to account for missed payments. I believe it is at least possible that the agreement before us represents one such effort, and I therefore concur in the decision to reverse and remand for the district court to make that determination.

ANDERSON, Circuit Judge, dissenting:

I respectfully dissent. I agree with the test adopted in the majority opinion. However, I do not agree with the application of that test in this case. I do not believe that the language of the ERISA Plan is ambiguous or that a remand is appropriate.

Section 2.01 of the ERISA Plan describes the assets of the Fund as follows:

"[a] all monies received and held by the Trustees from employer contributions pursuant to collective bargaining agreement, [b] all income from investments made and held by the trustees or otherwise, [c] or any other property received and held or receivable by the Trustees for the uses and purposes set forth in this Agreement and Declaration of Trust."

R2-44, Ex. 2, Ex. A at §2.01 (division into categories a, b, and c added). With respect to employer contributions, I respectfully submit that the language "all monies received and held" unambiguously includes only employer contributions which have actually been paid over to the Fund and are thus "received and held" by the Fund.

I do not agree with the majority that the language – "any other property received and held or receivable" – introduces ambiguity. To hold that this language in category (c) introduces ambiguity with respect to whether or not unpaid employer contributions are Plan assets, as the majority does, ignores the fact that category (a) deals with employer contributions, whereas this language in

15

category (c) deals with "any other property," other than employer contributions and income from investments. Furthermore, I submit that the only plausible reading of the term "receivable" is as a contractual or legal claim for payment of money due. I do not believe it is plausible to construe that term to embrace the money actually due in the hands of the account debtor. If that were the case, then, any run-of-the-mill contractual claim would convert the person against whom the claim was held into a fiduciary. In other words, the debtor owing the Fund any account receivable would be converted into a fiduciary.[1] For example, if the Fund were entitled to a deposit reimbursement from its utility company, the utility company would be converted into a fiduciary. I respectfully submit that the "receivable" term cannot be stretched to such a meaning.

For the foregoing reasons, I conclude that the Fund has a mere contractual claim against the Halls for the unpaid contributions, and thus the unpaid contributions are not assets of the ERISA Plan. Chapman v. Klemick, 3 F.3d 1508, 1514 (11th Cir. 1993); Local Union 2134, UMW of America v. Powhatan Fuel, 828 F.2d 710, 714 (1987).[2]

---

[1] This is because the account debtor would control the money in its own hands (i.e., before it is paid over to discharge the account), and under 19 U.S.C. § 1002(21)(A)(i) "a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any authority or control respecting management or disposition of its assets."

[2] I agree with Judge Barkett that we cannot, as a matter of law, exclude "the possibility that employer and employee representatives did intend for a fiduciary status to attach

16

in some circumstances to officers with control over the corporate accounts of employers delinquent in their contribution obligations." Opinion of Judge Barkett, specially concurring, at 3. I do not so hold here. All I would hold here is that the language of the instant Plan cannot be construed to embrace that possibility, and is not ambiguous in that regard.