[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10036
_____

D. C. Docket No. 1:10-cv-20663-JAL

MANUEL PANTOJA,

Plaintiff-Appellant,

versus

EDWARD ZENGEL & SON EXPRESS, INC.,
a Florida corporation,
a.k.a. Edward Zengel & Son, Inc.,
EDWARD ZENGEL, SR.,
EDWARD ZENGEL, JR.,
MARIE ZENGEL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 11, 2012)

Before DUBINA, Chief Judge, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal presents the question whether an employer's unpaid fringe benefit contributions owed to an employee 401(k) plan are "plan assets" within the meaning of the Employee Retirement Income Security Act ("ERISA"), and thus, whether an employer breaches its fiduciary duty to the plan's beneficiary by failing to contribute. The district court found the unpaid contributions were not "plan assets" because the unpaid contributions were not clearly identified as "plan assets" in the governing plan documents. Therefore, the district court entered judgment in favor of the employer because it did not breach a fiduciary duty as a matter of law. We affirm the district court's judgment.

I.

Edward Zengel & Son Express, Inc. ("EZS") is a family-owned trucking corporation that contracts with the United States Postal Service (the "Postal Service") to haul mail. Pursuant to the McNamara-O'Hara Service Contract Act of 1965 (the "SCA"), EZS's contract with the Postal Service obligates EZS to provide certain minimum wages and fringe benefits to its employees who perform services related to the contract. *See* 41 U.S.C. § 6702–6703. A contractor like EZS may satisfy its fringe benefit obligation by either paying the fringe benefits as wages or directly providing benefits, e.g., depositing the money into an employee 401(k)

2

plan.  EZS elected the 401(k) method of paying fringe benefits and created the Edward Zengel & Son, Inc. Employee Retirement Plan (the "Plan") in 2007.

The Plan allows for both employee and employer contributions.  Employees may contribute by electing to defer a percentage of their salary.  For employer contributions, the Plan states that if work performed is subject to prevailing wage laws, such as the SCA, "then [EZS] will make contributions to th[e] Plan to help satisfy the fringe benefit requirements of the law."  [R. 51-4 at 8.]  Furthermore, the Plan's "Adoption Agreement" provides that the contribution to the Plan "shall be an amount equal to the balance of the fringe benefit payment for health and welfare of each Participant" and that the contribution "shall be fully Vested."  [*Id.* at 44.]  A "Vested" contribution is "the nonforfeitable portion of any account maintained on behalf of a [Plan] Participant."  [R. 46-5 at 44.]  All money contributed to the Plan is held in a "Trust Fund" that consists of "the assets of the Plan and Trust as the same shall exist from time to time."  [*Id.*]

Manuel Pantoja ("Pantoja") worked for EZS for approximately six months in 2009.  From February until August 2009, EZS withheld fringe benefits totaling $3,472.17 without depositing most of the money owed to Pantoja into the Plan.[1]

---

[1] In the district court, Pantoja asserted that EZS, Edward Zengel Sr., Edward Zengel Jr., and Marie Zengel (collectively "Appellees") withheld wages from his paycheck, and in fact, Appellees' answer to Pantoja's original complaint admitted that the withheld funds were employee contributions.  However, in response to Pantoja's amended class action complaint,

3

Instead, EZS used the money to pay its payroll taxes.  Pantoja learned there was

less than $300 in his 401(k) account when Hartford Life Insurance Company, the

plan manager, sent him a balance statement in late 2009.  After Pantoja filed this

lawsuit, EZS subsequently remitted to the Plan the funds owed to him, plus

interest. [2]

In March 2010, Pantoja filed suit against EZS, and three corporate officers:

Edward Zengel Sr., Edward Zengel Jr., and Marie Zengel.  The amended class

action complaint alleged a breach of fiduciary duty under 29 U.S.C. § 1132(a)(2)

(Count I), requested injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) (Count II),

and sought additional redress under 29 U.S.C. § 1132(a)(1)(A) and (c) for failure

to provide requested information and documents (Count III).

After the district court denied his motion to certify a class, Pantoja

---

Appellees withdrew the admission, and on appeal, Pantoja concedes that he never elected to make employee contributions to the Plan and that the unpaid funds were in fact statutorily-mandated employer contributions for fringe benefits owed.  Nevertheless, Pantoja asserts the district court should not have disregarded Appellees' withdrawn admission that the fringe benefits were employee contributions.  His assertion is unfounded.  The district court had no obligation to hold Appellees to their inadvertent, prior admission, especially because Appellees asserted from the beginning, in discovery, that the funds were employer—rather than employee—contributions.  Regardless, amended pleadings become the operative documents in litigation.  6 ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2012) ("[A]ny admissions in the initial responsive pleading will be superseded by the amended answer.").

[2] Standing is not at issue in this appeal.  Though EZS's subsequent payment of the withheld benefits would seem to eliminate the injury prerequisite for standing, Pantoja could theoretically recover additional relief under ERISA, such as investment gains or profits, in addition to his requested injunction against future misconduct.

sought partial summary judgment on the issue of Appellees' liability for breach of fiduciary duties (Counts I and II).  Appellees opposed the motion and also requested summary judgment on the issue of ERISA liability.  The court denied Pantoja's motion and granted partial summary judgment in favor of Appellees, finding that the wrongfully-withheld fringe benefits were not "plan assets," and therefore, Appellees did not breach a fiduciary duty as a matter of law.  The parties mediated and reached a settlement agreement on Count III.  The district court then entered final judgment on Counts I and II.  Pantoja timely appealed.

## II.

"We review a district court's grant of summary judgment *de novo* considering all the facts and reasonable inferences in the light most favorable to the non-moving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).  However, this court reviews an order denying class certification for abuse of discretion. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1271 (11th Cir. 2001).

## III.

ERISA was enacted to protect employee pensions and other benefits. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1278 (11th Cir. 2012) (citation omitted).  It empowers plan beneficiaries to bring civil actions to recover benefits

owed and to enjoin actions that violate the statute or the terms of an ERISA plan. 29 U.S.C. § 1132(a). "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]" is personally liable for the breach. *Id.* § 1109(a). As relevant to this appeal, a person is an ERISA fiduciary if "he exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its *assets*." *Id.* § 1002(21)(A)(i) (emphasis added). A fiduciary owes the plan beneficiaries and participants the highest standard of care known to the law. *See Herman v. NationsBank Trust Co. (Ga.)*, 126 F.3d 1354, 1361 (11th Cir. 1997); *see also* 29 U.S.C. § 1104(a)(1) (stating that fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries").

While ERISA itself does not define the term "assets," federal regulations do prescribe that ERISA "plan assets"

> include amounts (other than union dues) *that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution* or repayment of a participant loan *to the plan*, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102 (emphasis added). Thus, an *employee's* elective contributions to an ERISA plan, withheld from his wages, are "plan assets" even

6

when the funds remain in the employer's possession.  *See United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir. 1991).  However, federal regulations do not address *employer* contributions to an ERISA plan—the issue in this appeal.

Recognizing this absence of regulation, we have held that unpaid employer contributions are not "plan assets" unless specific and clear language in the plan documents or other evidence so indicates.  *See ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013–14 (11th Cir. 2003).  We have been hesitant to hold otherwise because of the unfairness in imposing strict fiduciary responsibilities—and personal liability—upon corporate officers who are not clearly aware of their status as fiduciaries.  *See id.* at 1015–16 (quoting *Herman*, 126 F.3d at 1366); *see also In re Halpin*, 566 F.3d 286, 292 (2d Cir. 2009) (noting that "if unpaid employer contributions [are] plan assets, the employer would automatically become an ERISA fiduciary once it failed to make payments" and thus, an "employer would owe the plan undivided loyalty at the expense of competing [interests]").[3]

Furthermore, our sister circuits have recognized that an employer's failure to pay contributions owed simply makes the employer a *debtor* of the ERISA plan,

---

[3] Notably, the Supreme Court has also strongly indicated that unpaid employer contributions are not plan assets.  *See Jackson v. United States*, 553 U.S. 1163, 129 S. Ct. 1307 (2009), *vacating and remanding*, 524 F.3d 532 (4th Cir. 2008).  In *Jackson*, the Fourth Circuit held that employer contributions are plan assets "when they bec[o]me due and payable" to the plan.  524 F.3d at 542.  However, on appeal to the Supreme Court, the Solicitor General took the position that unpaid employer contributions are not plan assets.  The Court subsequently vacated and remanded the case in light of this assertion.

7

but not a *fiduciary* of plan assets. *See, e.g.*, *Halpin*, 566 F.3d at 290; *Graphic Commc'ns Intern. Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 732 (8th Cir. 2008) ("Corporate assets do not become plan assets merely because an employer has a corporate obligation to make payments to the plan."); *In re Luna*, 406 F.3d 1192, 1205 (10th Cir. 2005) (stating that although the contractual right to unpaid funds is *itself* a plan asset, "a delinquent employer-contributor is merely a debtor, not a fiduciary"); *see also Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) ("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan." (citing *Local Union 2134, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987))). Thus, absent language to the contrary, courts have been unwilling to find that an employer is a fiduciary of "plan assets" simply because it has a contractual obligation to contribute to a plan.

Yet Pantoja argues this case is distinguishable because of the mandatory nature of the Appellees' obligation to make contributions. He posits that the district court should have construed the unpaid funds as employee contributions because the fringe benefits were not to be paid at Appellees' discretion, but rather,

8

the funds were "required" and "due" pursuant to law.  In effect, Pantoja argues that mandatory, non-elective, unpaid employer contributions should be considered the legal equivalent of elective employee contributions.

Pantoja is incorrect.  First, his argument ignores that the employers in *ITPE Pension Fund*, *Halpin*, *Bjorkedal*, *Luna*, and *Cline* were each contractually-bound to contribute fringe benefits for their employees.  That this mandatory obligation arose from a contractual arrangement rather than the SCA, as in this case, is inapposite.  In each case, employees had a legal right to the unpaid benefits.  But this right, without a clear intent to create a fiduciary relationship, does not transform unpaid employer contributions into plan assets.

Second, the other cases cited by Pantoja in apparent support of his position in actuality serve only to reinforce this court's precedent.  In each case, the court found the unpaid employer contributions were plan assets only because the plan documents clearly indicated contributions became assets when "due" or "owing," rather than when they were actually remitted to the plan.  *See Plumbers Local 98 Defined Benefit Funds v. Controlled Water, Inc.*, No. 03-CV-72888-DT, 2006 WL 2708544, at *5 (E.D. Mich. Sept. 19, 2006) (finding that the "Plaintiffs' [plan] documents, incorporated into the [contract], provide that contributions become *vested* plan assets when *due*" (emphasis added)); *NYSA-ILA Med. & Clinical Servs.*

9

*Fund v. Catucci*, 60 F. Supp. 2d 194, 200–01 (S.D.N.Y. 1999) (plan documents defined the plan as consisting of, inter alia, "money received from *or owing from* any other person, corporation, or Fund required to make contributions or payments to this Fund" (emphasis added)); *Galgay v. Gangloff*, 677 F. Supp. 295, 301 (M.D. Pa. 1987) (express terms of the wage agreement provided that "[t]itle to all the monies paid into and/or *due and owing* said fund shall be vested in . . . the fund" (emphasis added) (internal quotations omitted)).  Thus, each case cited by Pantoja is consistent with our holding that unpaid employer contributions, absent contractual language or other evidence indicating the contrary, are not plan assets, and the failure to pay is not a breach of fiduciary duty under ERISA.

## IV.

Upon examination of the Plan documents, we find no clear and specific language indicating the fringe benefits are "plan assets" before they are actually remitted to the Plan.  Indeed, unlike the plan documents in *ITPE Pension Fund*, this contract is not even susceptible to such a reading.  *See* 334 F.3d at 1016. Without clear language or any evidence indicating otherwise, we conclude that the

unpaid funds cannot be construed as plan assets; therefore, the Appellees did not breach a fiduciary duty as a matter of law.[4]

**AFFIRMED.**

---

[4] This holding moots the issue of class certification. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005).