**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GREGORY BOS,
*Appellant*,

v.

BOARD OF TRUSTEES, in their
capacities as Trustees of the
Carpenters Health and Welfare Fund
of California; Carpenters Vacation-
Holiday Trust Fund for Northern
California; Carpenters Pension Trust
Fund for Northern California;
Carpenters Annuity Trust for
Northern California; Carpenters
Training Trust Fund for Northern
California; Northern California
Carpenters Regional Council,
*Appellee*.

No. 13-15604

D.C. No.
2:12-cv-02026-
MCE

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
May 14, 2015—San Francisco, California

Filed July 30, 2015

Before: Diarmuid F. O'Scannlain and Sandra S. Ikuta,
Circuit Judges and Larry A. Burns,* District Judge.

Opinion by Judge O'Scannlain

## SUMMARY**

### Bankruptcy

Reversing the district court's judgment affirming the bankruptcy court, the panel held that a debt was not nondischargeable as a debt incurred due to the Chapter 7 debtor's fraud or defalcation while acting in a fiduciary capacity.

Agreeing with the Sixth and Tenth Circuits, the panel held that the debtor was not a "fiduciary" under 11 U.S.C. § 523(a)(4) when he failed to make contractually required contributions to an employee benefits trust governed by the Employee Retirement Income Security Act. The panel declined to recognize an exception to the rule that unpaid contributions by employers to employee benefit plans are not plan assets, even though other courts had recognized an exception when the plan document expressly defines the fund to include future payments.

---

* The Honorable Larry A. Burns, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed with instructions to remand to the bankruptcy court with instructions to discharge the debt.

**COUNSEL**

Kristen Ditlevsen Renfro, Desmond, Nolan, Livaich & Cunningham, Sacramento, California, argued the cause and, along with J. Russell Cunningham, J. Luke Hendrix, and Gabriel P. Herrera, filed the briefs for appellant.

Tracy L. Mainguy, Weinberg, Roger & Rosenfeld, Alameda, California, argued the cause, and Christian L. Raisner, Emily P. Rich, Jordan D. Mazur, and Jolene E. Kramer filed the brief for the appellees.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether an employer's contractual requirement to contribute to an employee benefits trust fund makes it a fiduciary of unpaid contributions.

I

Beginning in 2007, Gregory Bos was owner and president of Bos Enterprises, Inc. ("BEI"). BEI was a member of the Modular Installers Association, an employer association. As president of BEI, Bos agreed that BEI would be bound by the Carpenters' Master Agreement, and several trust agreements. The Carpenters' Master Agreement required each employer—including BEI—to contribute monthly payments

based on hours of work to the trust funds (the "Funds")[1] for the purpose of providing employee benefits. Each trust agreement defined its respective fund as including "all contributions required by the [Carpenters' Master Agreement] . . . to be made for the establishment and maintenance of the [respective plan], and all interest, income and other returns of any kind." With the exception of the Health and Welfare Fund Agreement, the trust agreements defined each fund to include, as well, any other money received or held because of or pursuant to the trust.

Neither party disputes that Bos personally had full control over BEI's finances, as well as authority to make payments on behalf of BEI, whether to the Funds or to other creditors. Thus, Bos was personally responsible for making the required contributions to the Funds on behalf of BEI. In any event, he struggled to make the payments required by the Carpenters' Master Agreement. On March 9, 2009, Bos signed a promissory note personally guaranteeing payment to the Funds of $359,592.09—the amount he had failed to pay from August 2008 through January 2009. Although he made one payment in April 2009 of $30,824.99, he otherwise failed to meet the payment obligations required by the promissory note.

The Board of Trustees ("the Board")—charged with administering the Funds—subsequently filed a grievance against Bos and BEI to recover the outstanding amount owed to the Funds under the Carpenters' Master Agreement. An

---

[1] Specifically, each employer was required to contribute to five trust funds—the Health and Welfare Fund, the Pension Fund, the Vacation and Holiday Fund, the Training Fund, and the Annuity Fund.

arbitrator granted the Board an award of $504,282.59 against Bos, individually and as doing business as BEI, and BEI.

On February 28, 2011, Bos and his spouse filed a joint petition for Chapter 7 bankruptcy. On May 27, 2011, the Board filed a complaint against Bos and his spouse contesting the dischargeability of the $504,282.59 debt. The Board subsequently amended its complaint so as to dismiss Bos's spouse.

On July 12, 2012, the bankruptcy court entered judgment, concluding that Bos had committed defalcation while acting as a fiduciary of the Funds and that the $504,282.59 debt to the Funds was therefore nondischargeable.[2] On March 8, 2013, the district court affirmed the bankruptcy court on the same grounds, and on March 12, 2013, the district court entered an order to that effect. Bos timely appealed.[3]

## II

Bos argues that the bankruptcy court and district court erred in concluding that he was a "fiduciary" under 11 U.S.C. § 523(a)(4).

---

[2] Specifically, the bankruptcy court found that Bos's debt fell under 11 U.S.C. § 523(a)(4), which provides that debts incurred by a debtor due to the debtor's "fraud or defalcation while acting in a fiduciary capacity" are nondischargeable in Chapter 7 bankruptcy proceedings. The bankruptcy court also found, however, that Bos's debt did not fall under either 11 U.S.C. § 523(a)(2) or (a)(6), which deem nondischargeable those debts incurred through the debtor's fraud or willful and malicious injury. On appeal, the parties do not challenge the 11 U.S.C. § 523(a)(2) or (a)(6) determinations.

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291.

A

Section 523(a)(4) of the Bankruptcy Code provides that Chapter 7 debtors may not discharge debts incurred due to the debtor's "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). For a debt to be held nondischargeable under § 523(a)(4)'s defalcation provision, the debtor must have been a fiduciary prior to his commission of the fraud or defalcation. *See Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1190 (9th Cir. 2001). In other words, the act of wrongdoing that created the debt cannot be the same act that gives rise to the fiduciary relationship. *Id.*

If an individual is a fiduciary for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 29 U.S.C.), the individual is also treated as a fiduciary for purposes of § 523(a)(4). *See In re Hemmeter*, 242 F.3d at 1190. ERISA defines a fiduciary as, *inter alia*, an individual who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(I).

Both the bankruptcy court and the district court concluded that Bos's debt was nondischargeable under § 523(a)(4) because he controlled money which was contractually required to be paid to the Funds—pursuant to both the Carpenters' Master Agreement and the promissory note—and therefore was a fiduciary for purposes of both ERISA and § 523(a)(4). Specifically, each concluded that because the trust agreements defined the Funds as including contributions

"required . . . to be made" to the Funds, the unpaid contributions were plan assets. They then concluded that because Bos, as president of BEI, personally had control over BEI's finances and the authority to make contributions to the Funds, he personally exercised the requisite control over the unpaid contributions to be deemed a fiduciary under ERISA, and therefore under § 523(a)(4) as well.

B

We have consistently held that unpaid contributions by employers to employee benefit funds are not plan assets. *See Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). Several district courts within this Circuit have recognized an exception to *Cline*, however, when the plan document expressly defines the fund to include future payments. *See, e.g.*, *Bd. of Trs. v. River View Constr.*, No. C-12-03514PJH(DMR), 2013 WL 2147418, at *6 (N.D. Cal. Apr. 17, 2013) (concluding that when the plan document defined the fund as including "all Contributions required . . . to be made," unpaid contributions were plan assets); *Trs. of the S. Cal. Pipe Trades Health & Welfare Tr. Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1165 (C.D. Cal. 2006) (concluding that when the plan document defined the fund as including money "due and owing to the Fund by the Employers," unpaid contributions were plan assets). These courts have construed such language as imposing ERISA fiduciary status upon an employer simply by virtue of its control over unpaid contributions to the fund. *See, e.g.*, *River View Constr.*, 2013 WL 2147418, at *6; *Temecula*, 438 F. Supp. 2d at 1168–69.

We have not yet determined whether to recognize such an exception to *Cline*. *See Carpenters Pension Tr. Fund for N.*

*Cal. v. Moxley*, 734 F.3d 864, 869 (9th Cir. 2013) (expressly declining to decide whether a plan document can classify unpaid contributions as plan assets so as to impose fiduciary status upon an employer). Moreover, the circuits that have addressed the issue are split.

The Eleventh Circuit, for instance, recognized the possibility of such an exception in *ITPE Pension Fund v. Hall*. 334 F.3d 1011, 1016 (11th Cir. 2003). Notably, the court there emphasized that the plan document defined the fund as including receivable property, rather than mere receivables, distinguishing between "a contractual or legal claim for payment of the money due, in contrast to the actual money due." *Id.* at 1014 n.4. The court explained that if the plan asset were merely a contractual right to payment, the employer would have no authority over the asset so as to establish a fiduciary relationship. *Id.* But because the plan document defined the fund as including receivable property, the court concluded that the unpaid contributions themselves could become fund assets at the time of nonpayment, and the employers—who had control over the money which they were contractually obligated to pay to the fund—would therefore be treated as fund fiduciaries by virtue of their nonpayment. *Id.*

The Second Circuit has similarly construed a plan document designating plan assets to include unpaid contributions as establishing fiduciary status for an employer who had authority to make such contributions. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *see also Rahm v. Halpin* (*In re Halpin*), 566 F.3d 286, 290 (2d Cir. 2009) (speculating that a plan document could designate unpaid contributions as plan

assets sufficient to establish fiduciary status for purposes of § 523(a)(4), but ultimately concluding that the document in that case failed to do so).

C

Other circuits, however, have declined to apply such an exception, particularly in the context of § 523(a)(4).

The Tenth Circuit, for instance, declined to apply the exception in *Navarre v. Luna* (*In re Luna*), 406 F.3d 1192 (10th Cir. 2005).[4]  The *Luna* court first concluded that a plan document could impose on an employer a contractual obligation that would create some form of plan asset.  *Id.* at 1198–201.  Departing from the approach taken by the Eleventh Circuit in *Hall*, however, the *Luna* court emphasized that the ERISA definition of "asset" is determined by reference to property law.  *Id.* at 1199.  "Under ordinary notions of property rights, an ERISA plan does not have a *present interest* in the unpaid contributions until they are actually paid to the plan."  *Id.*  Rather, "the plan holds a *future interest* in the collection of the contractually-owed contributions"; in other words, regardless of the language in the plan document, the plan holds the contractual right to collect the unpaid contributions—not the unpaid contributions themselves.  *Id.* at 1199–200; *see also* Restatement (First) of Property ch. 1 intro. note (1936) (explaining that "property" includes intangibles, such as a chose in action).  Thus, the proper question regarding control of the asset is not whether

---

[4] Notably, unlike *Hall* and *Moulton Masonry*, *In re Luna* arose in the context of a Chapter 7 bankruptcy proceeding, and addressed the specific question of whether a debt arising from these unpaid amounts was nondischargeable under 11 U.S.C. § 523(a)(4).  406 F.3d at 1197.

the employer controlled the money that it was obligated to pay to the plan, but rather whether the employer had control over the contractual right to collect the unpaid contributions. *In re Luna*, 406 F.3d at 1202–08. Because the employers in *Luna* had no control over the contractual right to collect the unpaid contributions—they simply had control over the money itself—the court concluded that the employers were not plan fiduciaries, and therefore the debt incurred by failing to make contractually-required payments to the plan was dischargeable regardless of § 523(a)(4). *Id.*

The Sixth Circuit has also declined to apply an exception to the general rule that an employer cannot be an ERISA fiduciary with respect to unpaid contributions. In *Board of Trustees of the Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635 (6th Cir. 2007), for instance, the court declined to apply the exception in the § 523(a)(4) context on the ground that, even if the plan document could make the unpaid contribution itself a plan asset, such a classification would impermissibly impose fiduciary status based on the act of wrongdoing. *Id.* at 643; *see also Sheet Metal Local 98 Pension Fund v. Airtab, Inc.*, 482 F. App'x 67, 69–70 (6th Cir. 2012) (adopting the *Luna* court's reasoning to conclude that employers did not have sufficient control over the plan's claim for breach of contract to establish ERISA fiduciary status). Thus, the Sixth Circuit has determined that an employer cannot commit defalcation under § 523(a)(4) simply by failing to make contractually-required contributions, even if the plan defines the fund as including future contributions.

D

We agree with the view taken by the Sixth and Tenth Circuits.  Indeed, it comports with the limited approach we take in recognizing fiduciary status, particularly in the § 523(a)(4) context.  *See Cal-Micro, Inc. v. Cantrell* (*In re Cantrell*), 329 F.3d 1119, 1125 (9th Cir. 2003) ("[W]e have adopted a narrow definition of 'fiduciary' for purposes of § 523(a)(4) . . . ."); *see also Hall*, 334 F.3d at 1015 (acknowledging that fiduciary status should not be imposed unless the individual is "clearly aware of his status as a fiduciary").

Moreover, a typical employer[5] never has sufficient control over a plan asset to make it a fiduciary for purposes of § 523(a)(4).  Specifically, even if a plan document could convert an unpaid contribution into some type of plan asset, and even if the language in either the trust agreements or the promissory note here were sufficiently specific to do so, such an "asset" could legally be classified in only one of three ways.

First, as the *Luna* court explained, such asset could be classified as the contractual right to collect payments once they become due.  406 F.3d at 1199–200; *see also* Restatement (Third) of Trusts § 40 cmt. b (2003) (noting that trust property may include choses in action or claims against third parties).  In the case at bar, such a right could be enforced either under the Carpenters' Master Agreement or

---

[5] The parties do not allege, nor is there evidence in the record to support the notion, that Bos had any other interaction with the Funds that could have given rise to a fiduciary relationship other than his failure to make contractually-required contributions.

the promissory note. In either event, however, an employer with no authority over the management of the plan—such as BEI here—has no control over enforcing such a right; rather, as demonstrated by the existence of the present lawsuit brought by the Board *against* Bos, the designated fund administrator has the authority to enforce the contractual right. Thus, because an employer would lack the requisite control over such plan asset, it could not qualify as a fiduciary for purposes of either ERISA or § 523(a)(4).

Second, as in *Hall*, such asset could be classified as the unpaid past-due contributions. 334 F.3d at 1014. There, however, the event that created the debt—the nonpayment of the funds—was the same event that created the fiduciary status, and thus, the debt would not fall under § 523(a)(4). *See In re Hemmeter*, 242 F.3d at 1190.

Third, as the Board argues here, such asset could be classified as amounts which the employer must eventually contribute to the plan, but which are not yet due, thus avoiding the problem of the act of wrongdoing creating the fiduciary status. The classification logically fails, however, as, until the time payment is due, the plan does not actually possess the money, and in fact has no present right to it. *See* Restatement (First) of Property § 153 (1936) (explaining that an owner has a present interest in particular property only if it may immediately exercise control over such property). Thus, such asset is in fact more appropriately classified as the contractual right to bring a claim against the employer for delinquent payments if the payments are in fact never made. Because, as discussed above, the typical employer—like BEI—would have no control over such a right, the employer would lack the requisite authority to be considered a fiduciary under § 523(a)(4). Thus, even if the language in the trust

agreements and the promissory note sufficed to turn unpaid contributions into some form of plan asset, neither BEI nor Bos ever had control over such asset prior to nonpayment.

Therefore, consistent with our general rule that unpaid contributions to employee benefit funds are not plan assets, *see Cline*, 200 F.3d at 1234, Bos did not engage in defalcation for purposes of § 523(a)(4).[6]

## III

Because Bos did not act as a fiduciary under 11 U.S.C. § 523(a)(4), and because the bankruptcy court and district court expressly found that Bos's debt did not fall under any of the other nondischargeability exceptions put forth by the Board, we reverse the district court's judgment with instructions to remand to the bankruptcy court with instructions to discharge the debt. *See, e.g.*, *State Bar of Cal. v. Taggart* (*In re Taggart*), 249 F.3d 987, 994 (9th Cir. 2001), *superseded by statute on other grounds*, Cal. Bus. & Prof. Code § 6086.10(e).

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

[6] Because we conclude that Bos was not acting as a fiduciary for purposes of § 523(a)(4), we need not address whether the bankruptcy court and district court erred in failing to inquire whether Bos behaved with "gross recklessness" in respect to his failure to make contractually-required payments to the Funds. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757 (2013).